1  JEREMY L. VITUG, ESQ. (SBN 322833)
   6909 Reseda Boulevard
2  Reseda, California 91335
   Telephone: (818) 634-6223
3  Facsimile: (818) 881-2788

4

5  Attorney for Defendant,
   The Residences at Royal Bellingham Inc.

6

7              **UNITED STATES DISTRICT COURT**

8      **CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION**

| | |
|---|---|
| ESTATE OF NORA VASQUEZ ACEBES, by and through its Successor-in-Interest ARLENE ELAMPARO; ARLENE ELAMPARO, an individual; EDGAR ACEBES, an individual; JOCELYN ACEBES, an individual; ARNOLD ACEBES, an individual; ANNA DESHONG, an individual, | Case No. |
| | **NOTICE OF REMOVAL** |
| Plaintiffs | **[Re: Los Angeles County Superior Court Case No. 22STCV01705]** |
| v. | |
| THE RESIDENCES AT ROYAL BELLINGHAM INC.; GLENDA SEACHON, an individual (sued as nominal defendant); and DOES 1 through 100, inclusive, | |
| Defendants. | |

        COMES NOW, Defendant THE RESIDENCES AT ROYAL BELLINGHAM INC., by and through their undersigned counsel, hereby remove this action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California, Western Division, reserving all defenses and reserving all objections to venue based on 42 U.S.C. § 247d-6d(e)(1), pursuant to 28 U.S.C. §§ 1441, 1442, and 1446, on the following grounds:

///

///

- 1 -
**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

## I.      **STATEMENT OF THE CASE**

1.      This action was commenced in the Superior Court of the County of Los Angeles, California as Case No. 22STCV01705 on January 14, 2022.

2.      Defendant The Residences at Royal Bellingham Inc. ("Royal Bellingham") was served with the Summons and Complaint on March 15, 2022 by substitute service. (Exhibit A)

3.      On August 31, 2022, Plaintiffs filed, and Defendant Royal Bellingham was served with, a First Amended Complaint ("FAC").  The FAC includes new allegations that renders this action removable under 28 U.S.C. § 1441(a). These new allegations place Plaintiffs' claims directly within the purview of the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. § 247d-6d(d), because they arise directly out of and relate to the manner in which Royal Bellingham, a "covered person" under the PREP Act, administered, allocated, and used covered countermeasures during the pandemic, including the administration and delegation of masks/respiratory protective equipment, personal protective equipment, as well as the provision of safety countermeasures and protocols to respond to the COVID-19 pandemic to keep residents of the facility safe. (*See* e.g., Exhibit B, First Amended Complaint at ¶ 34(a-h) & ¶ 42 (a)-(d)).

4.      Accordingly, this Notice of Removal is timely. See 28 U.S.C. § 1446(b); Fed. R. Civ. Proc. 6(a)(1); see also *McMahon Chevrolet, Inc. v. Davis*, S.D.Tex.1975, 392 F.Supp. 322 ["If a right to removal does not appear upon the filing of original complaint or petition in state court, but rather upon the filing of subsequent pleading or other conduct of party, 30-day period for removal under Section 1446(b) commences to run anew"]; *Callen v. Callen*, 827 F.Supp.2d 214 (S.D.N.Y.2011);  *Disher v. Citigroup Global Markets, Inc*., 487 F.Supp.2d 1009 (S.D.Ill.2007); *Air Starter Components, Inc. v. Molina*, 442 F.Supp.2d 374 (S.D.Tex.2006).

5.      The FAC asserts causes of action for alleged breached of implied warranty of habitability, elder abuse (Cal. Welfare & Inst. Code § 15600), negligence/ negligence per se, wrongful death, and concealment resulting from alleged misconduct by a covered person in the administration of a covered countermeasure under the PREP Act, 42 U.S.C. §§ 247d-6d(d), 247d-6e. (*See generally* Exhibit B, First Amended Complaint.)

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

6.      More specifically, Plaintiff claims that Defendant engaged in negligent and/or willful misconduct in the care rendered to her for infection control during a period when her she and the facility were impacted by exposure, diagnosis, and treatment of COVID-19 and in the distribution, administration, or use of medical countermeasures, like segregation, social distancing, COVID-19 testing and personal protective equipment (PPE), to prevent the spread of COVID-19 within the residential care facility for the elderly (RCFE) known as Royal Bellingham, where the Decedent resided. (*Id.*)

7.      The Complaint seeks damages including compensation for general damages, special damages, punitive damages, costs of suit, injunctive relief, and attorney's fees. (*Id.*)

## II.      PROCEDURAL REQUIREMENTS

8.      This notice is filed on behalf of Defendants in the above-styled case pursuant to 28 U.S.C. § 1446(b)(2)(A).

9.      Concurrent with the filing of this Notice or promptly thereafter, Defendant is serving this Notice of Removal on all other parties pursuant to 28 U.S.C. § 1446(d).

10.     Pursuant to 28 U.S.C. § 1446(a), copies of pleadings and documents from the Superior Court for the County of Los Angeles served upon or provided to Defendant are filed con currently herewith.

## III.     FEDERAL QUESTION JURISDICTION EXISTS UNDER 28 U.S.C. § 1331 BECAUSE PLAINTIFFS' CLAIMS ARISE UNDER THE FEDERAL PUBLIC READINESS AND EMERGENCY PREPAREDNESS ACT

### a.  PLAINTIFFS' CLAIMS ARE COMPLETELY PREEMPTED BY THE PREP ACT

11.     This action is removable under 28 U.S.C. § 1441(a) on the basis of original jurisdiction because Plaintiffs assert a claim "arising under" and governed by federal law within the meaning of § 1331.

12.     The claims presented in this case raise a federal question under the Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d(d), because the claims arise directly out of and relate to the manner in which Defendant Royal Bellingham, a "covered person" under the PREP

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

1   Act, administered, allocated, and used covered countermeasures during the pandemic, including the

2   administration and delegation of masks/respiratory protective equipment, personal protective

3   equipment, as well as the provision of safety countermeasures and protocols to respond to the

4   COVID-19 pandemic to keep residents of the facility safe.

5         13.   As such, Congress provided an exclusive remedy for the substance of the allegations,

6   and relief sought in the Complaint and Federal law expressly pre-empts state law for purposes of

7   federal question jurisdiction. §§ 247d-6d, 247d-6e.

8         14.   "Complete preemption" exists where a federal statute expressly preempts state law

9   and creates an exclusive federal remedy for preempted state claims. See, e.g., *Fossen v. Blue Cross

10  & Blue Shield of Mon., Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011); *In re WTC Disaster Site*, 414 F.3d

11  352, 380 (2d Cir. 2005); *Spear Marketing, Inc. v. Bancorp South Bank*, 791 F.3d 586 (5th Cir. 2015);

12  *Nott v. Aetna U.S. Healthcare, Inc.*, 303 F.Supp.2d 565 (E.D. Pa. 2004). Further, federal defenses

13  that will be asserted by defendants are sufficient to invoke complete preemption. *Jefferson Cty. v.

14  Acker*, 527 U.S. 423, 431 (1999).

15        15.   Here, as set forth below, Defendant asserts that the claims alleged in the Complaint

16  and the defenses to them are completely preempted by the PREP Act sections found at §§ 247d-6d

17  and 247d-6e. See *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 253 (2011) (Sotomayor, J., dissenting)

18  (where the majority found the National Childhood Vaccine Injury Act preempted state law, Justices

19  Sotomayor & Ginsburg further analyzed that the PREP Act unequivocally demonstrated intent to

20  completely preempt state law through its use of "categorical (e.g., 'all') and/or declarative language

21  (e.g., 'shall')").

22        16.   The PREP Act, which is a component of the Public Health Services Act ,42 U.S.C.

23  § 201, *et seq.*, grants healthcare providers and other "covered person[s]" immunity for all "claims

24  for loss arising out of, relating to, or resulting from" the "administration" or "use" of approved

25  "counter measures" to combat a national public health emergency, such as the COVID-19 pandemic,

26  provided the Secretary of the Department of Health and Human Services (HSS) issues a declaration

27  to that effect. *See* 42 U.S.C. § 247d-6d.

28

- 4 -

17. Once the Secretary has issued a declaration, the PREP Act provides sweeping immunity for certain claims against certain covered individuals: "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure...." 42 U.S.C. § 247d-6d(a)(1). This immunity "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." *Id.* at § 247d-6d(a)(2)(B).

18. Through the PREP Act, Congress provided an exclusive remedy for the substance of the allegations and relief sought in the Complaint, and this federal law expressly pre-empts state law for purposes of federal question jurisdiction. *See* PREP Act, 42 U.S.C. § 247d-6d. It does so by providing the sole remedy for claims against covered persons for claims of injury or loss, which relate to the administration or use of a covered countermeasure, through a separate patient injury fund to be administered by the HSS. *Id.*

19. On March 10, 2020, the HHS Secretary issued a Declaration under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 ("March 10, 2020 Declaration"), which declared the COVID-19 pandemic a public health emergency under the PREP Act. 85 Fed. Reg. 15198-01. On December 3, 2020, the HHS Secretary issued a Fourth Amendment to his March 10, 2020 Declaration (the "Fourth Amendment"). 85 Fed. Reg. at 79190 (Dec. 9, 2020). In the Fourth Amendment, the HHS Secretary defined the "administration" of a covered countermeasure as follows:

> Administration of the Covered Countermeasure means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for the purpose of distributing and dispensing countermeasures.

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Where there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to ... the administration to ... an individual" under 42 U.S.C. 247d-6d.

Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections. 85 Fed. Reg. at 79197.

20.     In the Fourth Amendment, the HHS Secretary also: (1) opined that "[t]here are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a uniform interpretation of the PREP Act;" and (2) clarified that the Declaration "must be construed in accordance with the Department of Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions on the Public Readiness and Emergency Preparedness Act and the Declaration (Advisory Opinions)" and expressly incorporated the Advisory Opinions for that purpose. 85 Fed. Reg. at 79191, 79197.

21.     On January 8, 2021, HHS General Counsel issued new controlling authority (hereinafter "AO 21-01," attached as Exhibit C)  confirming unequivocally that: (1) the PREP Act is invoked by allegations like those in the Complaint; (2) the PREP Act is a "'Complete Preemption' Statute" which confers federal question removal jurisdiction under 28 U.S.C. § 1441(a); and (3) federal jurisdiction is separately conferred in such cases under the doctrine articulated by the Supreme Court in *Grable & Sons Metal Prod., Inc. v. Darue  Eng'g & Mfg.*, 545 U.S. 308 (2005) because "ordaining the metes and bounds of PREP Act protection in the context of a national emergency necessarily means that the case belongs in federal court."

22.     Advisory Opinion 21-01 is binding on this Court, as the HHS Secretary has incorporated all HHS Advisory Opinions pertaining to COVID-19 into the PREP Act's implementing Declaration itself, and proclaimed that the Declaration "must" be construed in accordance with them. *See* Amendment Four, at 85 Fed.Reg. at 79192, 79194. As such, the HHS Advisory Opinions have the same "controlling weight" as the Declaration and PREP Act itself. Additionally, where Congress has expressly delegated interpretative authority to an agency, the

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

1   agency's interpretative proclamations are controlling on the federal courts. *See Chevron, U.S.A.,*

2   *Inc.*, 467 U.S. at 843-44.

3        23.    A recent case addresses the January 8, 2021 Advisory Opinion and concludes that

4   removal is proper because the PREP Act is a complete preemption statute. On February 10, 2021,

5   in *Garcia v. Welltower OpCo Group LLC*, 2021 WL 492581 (C.D. Cal. Feb. 10, 2021), the court

6   noted that district court decisions that had determined that the PREP Act did not have complete

7   preemptive effect were decided before the more recent guidance from the HHS Office of General

8   Counsel and, thus, the *Garcia* court instead denied the motion to remand. The court afforded

9   deference to the Secretary's Office of General Counsel's Advisory Opinion under the well-

10   established rules in *Chevron*; *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); and *Mead Corp.*, 533

11   U.S. at 220.

12        24.    Furthermore, since the Garcia decision, the HHS Secretary amended the Declaration

13   a sixth time, reaffirming, "The plain language of the PREP Act makes clear that there is preemption

14   of state law as described above." 86 Fed. Reg. 9516, 9517 (Feb. 16, 2021)

15        25.    On its face, Plaintiffs' Complaint alleges claims against "covered persons" and

16   involve a claim for loss, which has a causal relationship to the administration to or use by an

17   individual of a covered countermeasure, which was administered after February 4, 2020, and which

18   was administered or used by a "program planner" for purposes of preventing, treating, mitigating,

19   or diagnosing COVID-19 and/or SARS-Cov-2 coronavirus, and therefore, the claims here fall within

20   the scope of the PREP Act, 42 U.S.C. § 247d-6d(d).

21        26.    Although pled as state law claims, Plaintiffs' claims arise under federal law as the

22   PREP Act provides the *exclusive* federal remedy for claims for injury related to a covered person's

23   use and administration of covered countermeasures to combat this public health emergency, of the

24   COVID-19 pandemic, and, therefore, Plaintiffs' claims are completely preempted by federal law.

25        27.    More specifically, Plaintiffs' claims fall directly within the purview of the PREP Act

26   because they arise directly out of and relate to the manner in which Royal Bellingham, a "covered

27   person" under the PREP Act, administered, allocated, and used covered countermeasures during the

28   pandemic, including the administration and delegation of masks/respiratory protective equipment,

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

1   personal protective equipment, as well as the provision of safety countermeasures and protocols to

2   respond to the COVID-19 pandemic to keep residents of the facility safe. (*See* e.g. Exhibit B at ¶

3   34(a)-h) & ¶ 42 (a)-(d)

4          28.     Therefore, the doctrine of complete preemption is invoked and jurisdiction over these

5   claims is exclusively federal. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When

6   the federal statute completely preempts the state law causes of action, a claim which comes within

7   the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal

8   law").

9          29.     Despite Plaintiff's assertion of state law claims, because the PREP Act offers

10  complete preemption, jurisdiction over the claims is exclusively federal. See *Beneficial Nat. Bank*

11  *v. Anderson*, 539 U.S. 1, 8 (2003) ("[w]hen the federal statute completely preempts the state-law

12  cause of action, a claim which comes within the scope of that cause of action, even if pleaded in

13  terms of state law, is in reality based on federal law"). Thus, under preemption doctrine alone,

14  removal is proper under 28 U.S.C. § 1441(a).

15        **b.  PLAINTIFFS' CLAIMS ARE WITHIN THE SCOPE OF THE PREP ACT**

16         30.     The First Amended Complaint at issue includes new allegations that undisputedly

17  places Plaintiffs' claims directly within the purview of the Public Readiness and Emergency

18  Preparedness Act ("PREP Act"), 42 U.S.C. § 247d-6d(d).

19         31.     Here, the Plaintiffs' claims are within the scope of the PREP Act as they arise directly

20  out of and relate to the manner in which Royal Bellingham, a "covered person" under the PREP

21  Act, administered, allocated, and used covered countermeasures during the pandemic, including the

22  administration and delegation of masks/respiratory protective equipment, personal protective

23  equipment, as well as the provision of safety countermeasures and protocols to respond to the

24  COVID-19 pandemic to keep residents of the facility safe. (See e.g., Exhibit B. Complaint at ¶ 34(a)-

25  h) & ¶ 42 (a)-(d).

26         32.     As alleged in the Complaint, Defendant is a "covered person" in that Royal

27  Bellingham is a Residential Care Facility for the Elderly ("RCFE") licensed by the state of

28  California. Further, Royal Bellingham, as well as its employees and affiliates are "covered persons"

- 8 -

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

1   because each meet the requirements of a "program planner" of countermeasures under the PREP

2   Act and are "qualified persons who prescribed, administered or dispensed" a countermeasure under

3   the PREP Act. This is confirmed by the Office of the General Counsel, HHS in an opinion letter

4   dated August 14, 2020, stating that senior living communities administering covered

5   countermeasures are "covered persons," entitled to immunity under the PREP Act by virtue of their

6   status as both "program planners" and "qualified persons." (Attached as Exhibit D.)

7       33.   Plaintiff's claim "arises out of, relates to, or results from" the administration and use

8   of a "covered countermeasure" for the purpose of treating, diagnosing, curing, preventing, or

9   mitigating COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, as such

10  terms are defined within the PREP Act, §§ 247d-6d, 247d-6e, the Declaration Under the Public

11  Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID19, 85

12  Fed. Reg. 15198 (Mar. 17, 2020), amended by 85 Fed. Reg. 21012 (Apr. 15, 2020), and all

13  corresponding amendments, regulations, and interpretational case law.

14      34.   At the time of the allegations set forth in the Complaint, and based on such

15  allegations, Defendant was acting as "program planner[s]" that supervised the infection control

16  policy program, under which FDA-approved personal protective equipment including, inter alia,

17  N95 respirators, face shields, and gowns as well as diagnostic countermeasures were distributed and

18  administered to Plaintiff and the Royal Bellingham staff in an effort to diagnose, mitigate, and

19  prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom. Further,

20  Defendant's employees and affiliates were acting as employees of "program planner[s]" that

21  supervised and administered the infection control program that provided and used FDA-approved

22  countermeasures on Plaintiff and the Royal Bellingham staff in an effort to diagnose and mitigate

23  COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom.

24      35.   At the time of the allegations set forth in the Complaint, and based on such

25  allegations, Defendant's employees and affiliates were acting as "qualified persons" because

26  Defendant's employees were authorized to administer, deliver, and use FDA-covered

27  countermeasures, like personal protective equipment and FDA-approved COVID-19 devices,

28

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

1  medication, and diagnostic tests to diagnose and prevent COVID-19, or the transmission of SARS-

2  CoV-2 or a virus mutating therefrom.

3       36.    At the time of the allegations set forth in the Complaint, and based on such

4  allegations, Defendant was engaged in the management and operation of countermeasure programs

5  in an effort to diagnose and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus

6  mutating therefrom to a "population" and within a "geographic area" specified by the Declaration

7  under the PREP Act for Medical Countermeasures against COVID-19, 85 Fed. Reg. 15198 (Mar.

8  17, 2020), and all amendments thereto, or reasonably believed so by Defendants. Likewise,

9  Defendant's employees and affiliates were physically providing the countermeasures to Plaintiff

10  and using the countermeasures in an effort to diagnose and prevent COVID-19, or the transmission

11  of SARS-CoV-2 or a virus mutating therefrom to a "population" and within a "geographic area"

12  specified by the Declaration, and all amendments thereto, or reasonably believed so by Defendant.

13  The HHS Secretary confirmed the same in a guidance letter dated August 31, 2020 that diagnostic

14  testing for COVID-19 in senior living communities qualifies as a "covered countermeasure"

15  triggering PREP Act immunity. (Attached as Exhibit E.)

16       37.    At the time of the allegations set forth in the Complaint, the respirators and PPE used

17  by Defendant were approved by the FDA as a qualified pandemic or epidemic product and were

18  respiratory protective devices approved by the National Institute for Occupational Safety and Health

19  under 42 CFR part 84, and were administered, delivered, distributed, and dispensed in accordance

20  with the public health and medical response of the State of California or reasonably believed so by

21  Defendants. As noted above, Plaintiff's claim "arises out of, relates to, or results from" the

22  administration and use of such "covered countermeasures."

23       38.    Because Defendants acted in their statutory role as a "program planner" to make

24  reasonable choices in allocating covered countermeasures, prioritizing the administration or use of

25  covered countermeasures, and following applicable guidance, Defendants are covered persons under

26  the PREP Act.

27       39.    Plaintiffs' claims also fall squarely within the scope of the PREP Act as they are

28  "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

1  use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1) (2018). Plaintiffs'

2  claims arise out of Defendants' failure to implement adequate safeguards and protocol to prevent the

3  prevent the spread of the COVID-19 virus including the administration, allocation, distribution and

4  use, of COVID-19 countermeasures in response to the COVID-19 pandemic. These claims arise out

5  of Defendants' alleged failure to develop and follow policies and procedure to prevent the

6  transmission and spread of COVID-19. *See generally* Exhibit B. Therefore, Plaintiffs' claims fall

7  within the scope of the PREP Act, which encompasses "any claim for loss that has a causal

8  relationship with" the administration or use of a covered countermeasure and are causally connected

9  to the loss alleged by Plaintiffs in this action. 42 U.S.C. § 247d-6d(a)(2)(B) (2018).

10      40.    As the PREP Act completely preempts the state law claims set forth in Plaintiffs'

11  Complaint and immunizes Defendants from all such claims, a removal is proper under 28 U.S.C. §

12  1441(a).

13  **IV.   <u>JURISDICTION EXISTS UNDER THE FEDERAL OFFICER STATUTE</u>**

14      41.    Removal is proper under 28 U.S.C. §1442(a)(1), which provides for removal when a

15  defendant is sued for acts undertaken at the direction of a federal officer. Removal is appropriate

16  under §1442(a)(1), when the removing defendant establishes that:

17          (a)  Defendant is a "person";

18          (b)  Defendant was acting under the direction of a federal officer when it
            engaged in the allegedly tortious conduct;

19          (c)  There is a causal nexus between the Plaintiff's claims and Defendant's
            actions under federal direction; and

20          (d)  Defendant has raised a colorable defense based upon federal law.

21      42.    Defendant Royal Bellingham satisfies all elements for removal under Section

22  1442(a)(1).

23      43.    Royal Bellingham is a "person" for the purpose of the federal officer statute. The

24  term "person" includes "corporations, companies, associations, firms, partnerships, societies, and

25  joint stock companies, as well as individuals." 1 U.S.C. § 1; *see also Goncalves v. Rady Children's*

26  *Hospital San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017)

27      44.    Moreover, Royal Bellingham was "acting under" the direction of federal officers

28  when it engaged in the alleged tortious conduct.

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF
CIVIL ACTION**

45.     The U.S. Supreme Court has held that the phrase "acting under" involves "an effort to assist, or help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007); *see also In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Association of Philadelphia*, 790 F.3d 457 (3d Cir. 2015). The "acting under" requirement is broad and is to be liberally construed. *Watson*, 551 U.S. at 147. A specific instruction from a federal officer or a detailed regulation to compel specific conduct is sufficient. See, e.g., *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d. 387, 398-99 (5th Cir. 1998)

46.     Royal Bellingham meets the "acting under" prong for removal based on the federal officer statute. Here, Plaintiffs assert claims against Defendants that include negligence/ professional negligence and wrongful death, which ultimately all arise from Defendants' response to the COVID-19 pandemic. In taking steps to prevent the spread of COVID-19, Defendant Royal Bellingham did so in compliance with CDC and CMS directives, which were aimed at helping achieve the federal government's efforts at stopping or limiting the spread of COVID-19.

47.     On March 10, 2020, CMS published a memorandum clarifying and amending policies and guidance in light of the CDC's expansion of the types of facemasks healthcare workers may use in situations involving COVID-19.[1] In doing so, CMS acknowledged the federal government was taking "critical steps" to prepare health care facilities to respond to COVID-19 and acknowledged the need to "explore flexibilities and innovative approaches within our regulations to allow health care entities to meet the critical health needs of the country." The memorandum issued on this date cites specifically to updated guidance from the CDC addressing the supply, allocation, and use of various items utilized to prevent the spread of infection and directly treat the virus.

48.     The present COVID-19 pandemic resulted in several new regulations directives, guidance and requirements issued as a result of the Federal government acting through the regulatory framework of CMS and the CDC to convert nursing homes into frontline responders to

---

[1] Centers for Medicare & Medicaid Services, Guidance for use of Certain Industrial Respirators by Health Care Personnel (March 10, 2020) (available at https://www.cms.gov/files/document/qso-20-17- all.pdf).

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

the national COVID crisis. Indeed, the CDC acknowledged that current knowledge of the nature of the virus was evolving, and that these efforts were part of an "ongoing US public health response to identify and contain this outbreak and prevent sustained spread of 2019-nCov in the United States."[2] CMS directed infection control efforts and clarified CDC guidance to preserve scarce medical resources, including PPE, and maximizing the capacity of the healthcare system to navigate the spread of the pandemic. Further, CMS ordered facilities to restrict visitors, cancel communal activities, screen staff, amend policies regarding interaction with vendors, and handle potential end-of-life interactions with family members, among other interventions.[3] On April 2, 2020, CMS issued new guidelines aimed specifically to long-term care facilities to mitigate the spread of COVID-19, with the stated purpose of 'critical, needed leadership" and issuing "immediate" actions to "keep patients and residents safe."[4]

49.     Specifically, CMS directed long-term care facilities to "immediately" ensure compliance with "all CMC and CDC guidance related to infection control." Again, CMS specifically referenced and referred facilities to updated and revised CDC guidelines. CMS also implemented a number of actions to be undertaken immediately including 1) universal screening; 2) conservation of PPE; 3) proper PPE use; and 4) allocation of separate staffing, among other directives. This clearly demonstrates the fact that Defendant was acting at the direction of the federal government and as its agent in responding to COVID-19 response.

50.     All actions taken by Defendants in preparation for and response to the COVID-19 pandemic, were taken "in an effort to assist, or help carry out, the duties or tasks" as ordered by and performed pursuant to the direct orders and comprehensive and detailed directives issued by these

---

[2] Centers for Disease Control and Prevention, Update and Interim Guidance on Outbreak of 2019 Novel Coronavirus (February 1, 2020) (available at https://emergency.cdc.gov/han/HAN00427.asp).

[3] Centers for Medicare & Medicaid Services, Guidance for Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes (Revised) (March 13, 2020) (available at https://www.cms.gov/files/document/qso-20-14-nh-revised.pdf).

[4] Centers for Medicare & Medicaid Services, COVID-19 Long-Term Care Facility Guidance (April 2, 2020) (available at https://www.cms.gov/files/document/4220-covid-19-long-term-care-facilityguidance.pdf).

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

agencies. Defendant's actions and conduct were taken due to unprecedented and "strong government intervention" which went beyond the "mere auspices of federal direction." *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N. D. Cal. 1992). The national response effort converted Defendant into an agent of the United States and as such Defendant Royal Bellingham was "acting under" the direction of federal officers when it engaged in the alleged tortious conduct.

51.     Defendant was acting specifically at the direction and under the supervision of the United States government with respect to various countermeasures implemented to prevent and treat the COVID-19 virus, including following evolving and specific guidelines from CMS and CDC with respect to: (1) infection control policies and procedures; (2) PPE procurement; (3) PPE allocation; (4) admission and discharge of residents; (5) managing visitors and outside persons, (6) staffing allocation and retention; (7) isolation protocols and management, among multiple additional directives. Thus, Defendant's response to the COVID-19 outbreak as it relates to Ms. Acebes was directly related to *what they were asked to do* by the federal government.

52.     Finally, Defendant satisfies the "nexus" or "causation" requirement for federal officer jurisdiction as the alleged conduct was undertaken "for or relating to" a federal office. To meet this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." *In re Commonwealth*, 790 F.3d at 471. There is a clear causal nexus between the claims against Defendant and the actions taken by Defendant in responding to and administering care related to the COVID-19 outbreak. The Complaint alleges deficiencies in Defendant's actions concerning infection control procedures taken in efforts to prevent the transmission and spread of COVID-19 while preserving resources to enable a nationwide response. The nexus element is thus met by the various orders, guidelines, and recommendations followed by Defendant in addressing same.

53.     In addition, Defendant meets the requirement of the existence of a colorable federal defense as it intends to assert that immunity under the PREP Act applies to the present action. For the purposes of removal, the defense must be "colorable" and need not be "clearly sustainable" as the purpose for the removal statute is to secure that the validity of the defense may be tried in federal

1    court. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). This element is satisfied as Defendant has

2    a colorable defense under the PREP Act.

3         54.    Accordingly, in addition to federal question jurisdiction, removal is proper under

4    federal officer jurisdiction.

5    **V.    CONCLUSION**

6         WHEREFORE, having shown that this case is properly removable on the basis of federal

7    question jurisdiction and federal officer jurisdiction, Defendant provides notice pursuant to 28

8    U.S.C. § 1446 that the Action pending in Superior Court for the County of Los Angeles, California,

9    case no. 22STCV01705, is removed to the United States District Court for the Central District of

10   California, Western Division, and respectfully requests that this Court exercise jurisdiction over this

11   case.

12   DATED:   September 27, 2022              **Respectfully Submitted,**

13

14   _____
     Jeremy Vilug, Esq.
15   Attorney for Defendant The
     Residences at Royal Bellingham Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of September, 2022, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then be sent Electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent by first class mail to any counsel of record indicated as non-registered participants.

DATED:    September 27, 2022

_____

Jeremy Viriig, Esq.
Attorney for Defendant The
Residences at Royal Bellingham Inc.

*Attorney for Plaintiffs:*

Robert Jarchi (SBN 204168)
Ivan Puchalt (SBN 245128)
GREENE BROILLET & WHEELER,
LLP
222 N. Pacific Coast Highway, Suite
2100 El Segundo, CA 90245
Tel: 213.250.1800
Fax: 213.250.7900
ipuchalt@gbw.law
rjarchi@gbw.law

**DEFENDANT THE RESIDENCES AT ROYAL BELLINGHAM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 01/14/2022 02:37 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton Deputy Clerk

Case 2:22-cv-06936-JLS-JC   Document 1   Filed 09/27/22   Page 18 of 71   Page ID #:22

22STCV01705

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
THE RESIDENCES AT ROYAL BELLINGHAM INC.; GLENDA SEACHON, an individual
(sued as a nominal defendant); and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ESTATE OF NORA VASQUEZ ACEBES, by and through its Successor-in-Interest ARLENE
ELAMPARO; ARLENE ELAMPARO, an individual; EDGAR ACEBES, an individual;
JOCELYN ACEBES, an individual; ARNOLD ACEBES, an individual; ANNA DESHONG, an
individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California<br>111 North Hill Street<br><br>Los Angeles 90012<br>Stanley Mosk Courthouse | CASE NUMBER:<br>*(Número del Caso):*<br>**22STCV01705** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Robert D. Jarchi (204168); Ivan Puchalt (245128)      (310) 576-1200 (310) 576-1220
Greene Broillet & Wheeler, LLP
222 N. Pacific Coast Highway, Suite 2100 El Segundo, CA 90245

Sherri R. Carter Executive Officer / Clerk of Court

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* | 01/14/2022 | Clerk, by<br>*(Secretario)*   R. Clifton | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

Electronically FILED by Superior Court of California, County of Los Angeles on 01/14/2022 02:37 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton Deputy Clerk

Case 2:22-cv-06936-JLS-JC   Document 1-2   Filed 09/27/22   Page 19 of 71   Page ID #:22

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Timothy Dillon

**GREENE BROILLET & WHEELER, LLP**
LAWYERS
222 N. PACIFIC COAST HIGHWAY, SUITE 2100
P.O. BOX 955
EL SEGUNDO, CALIFORNIA 90245
TEL. (310) 576-1200
FAX. (310) 576-1220

(SPACE BELOW FOR FILING STAMP ONLY)

ROBERT D. JARCHI, SBN 204168 (rjarchi@gbw.law)
IVAN PUCHALT, SBN 245128 (ipuchalt@gbw.law)

Attorneys for  Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ESTATE OF NORA VASQUEZ ACEBES, by and through its Successor-in-Interest ARLENE ELAMPARO; ARLENE ELAMPARO, an individual; EDGAR ACEBES, an individual; JOCELYN ACEBES, an individual; ARNOLD ACEBES, an individual; ANNA DESHONG, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> THE RESIDENCES AT ROYAL BELLINGHAM INC.; GLENDA SEACHON, an individual (sued as a nominal defendant); and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO. 2 2 S T C V 0 1 7 0 5 <br><br> **COMPLAINT FOR DAMAGES** <br> 1. **Breach of implied warranty of habitability** <br> 2. **Elder Abuse and Neglect (Welfare and Institutions Code §15600, et seq.)** <br> 3. **Negligence/Negligence *Per Se*** <br> 4. **Violation of Residents' Bills of Rights (Health and Safety Code §1430(b))** <br> 5. **Wrongful Death** <br> 6. **Concealment** <br><br> **DEMAND FOR JURY TRIAL** <br><br> **(Amount in Controversy Exceeds $25,000)** |

COME NOW the plaintiffs ESTATE OF NORA VASQUEZ ACEBES, by and through its

successor-in-interest ARLENE ELAMPARO; ARLENE ELAMPARO, an individual; EDGAR

ACEBES, an individual; JOCELYN ACEBES, an individual; ARNOLD ACEBES, an individual;

ANNA DESHONG, an individual (hereinafter "Plaintiffs"), and for causes of action against

defendants THE RESIDENCES AT ROYAL BELLINGHAM INC.; GLENDA SEACHON, an

individual (sued as a nominal defendant) and DOES 1 through 100, inclusive, and each of them,

allege as follows:

[1019115]

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

**PARTIES**

1.    Plaintiff ARLENE ELAMPARO is the natural born child and lawful heir of Decedent NORA VASQUEZ ACEBES (hereinafter referred to at times as "Decedent").  At all times relevant herein, ARLENE ELAMPARO is and was a resident of Riverside County, State of California.

2.    Plaintiff EDGAR ACEBES is the natural born child and lawful heir of Decedent NORA VASQUEZ ACEBES (hereinafter referred to at times as "Decedent").  At all times relevant herein, EDGAR ACEBES is and was a resident of Australia.

3.    Plaintiff JOCELYN ACEBES is the natural born child and lawful heir of Decedent NORA VASQUEZ ACEBES (hereinafter referred to at times as "Decedent").  At all times relevant herein, JOCELYN ACEBES is and was a resident of Australia.

4.    Plaintiff ARNOLD ACEBES is the natural born child and lawful heir of Decedent NORA VASQUEZ ACEBES (hereinafter referred to at times as "Decedent").  At all times relevant herein, ARNOLD ACEBES is and was a resident of Los Angeles County, State of California.

5.    Plaintiff ANNA DESHONG is the natural born child and lawful heir of Decedent NORA VASQUEZ ACEBES (hereinafter referred to at times as "Decedent").  At all times relevant herein, ANNA DESHONG is and was a resident of Riverside County, State of California.

6.    Nominal defendant GLENDA SEACHON is the natural born child and lawful heir of Decedent NORA VASQUEZ ACEBES (hereinafter referred to at times as "Decedent").  At all times relevant herein, GLENDA SEACHON is and was a resident of Canada.  Nominal defendant GLENDA SEACHON's consent was not obtained to be joined as a Plaintiff, and she is therefore named herein as a nominal defendant pursuant to California Code of Civil Procedure § 382.

7.    Plaintiff ARLENE ELAMPARO is the Decedent's successor-in-interest pursuant to California Code of Civil Procedure § 377.10 and has declared herself as such as required by California Code of Civil Procedure § 377.32.

8.    Defendant THE RESIDENCES AT ROYAL BELLINGHAM INC. (hereinafter "Defendant") is a California Corporation with its principal place of business in the County of Los Angeles, State of California.

[1019115]
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

9. Defendants and DOES 1 through 100, inclusive, were, at all times relevant herein, in the business of providing long-term custodial care as a 24-hour skilled nursing facility as defined in Section 1250(c) of the <u>Health and Safety Code</u> in the County of Los Angeles and owned/controlled said property.

10. THE RESIDENCES AT ROYAL BELLINGHAM INC. is and at relevant times herein was licensed under the Department of Public Health and was therefore subject to the requirements of state law regarding the operation of skilled nursing facilities.  In doing the acts alleged herein, THE RESIDENCES AT ROYAL BELLINGHAM INC. acted at the implicit and/or explicit instruction of, and with the express and/or implied authority of the officers, administrators, directors, and operators of THE RESIDENCES AT ROYAL BELLINGHAM INC.

11. Decedent was a resident/tenant of Defendant's property from approximately 2015 through the time of her death in 2021, when she was 88 years old.

12. Plaintiffs are informed and believe and thereupon allege that Defendants DOES 1 through 100, inclusive, were, at all times relevant herein, individuals and/or entities rendering care and services to Decedent and whose conduct caused the injuries and damages alleged herein.

13. The true names and/or capacities, whether individual, corporate, associate or otherwise, of defendants, and each of them, DOES 1 through 100, inclusive, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names.  Plaintiffs are informed and believe and thereupon allege that each defendant fictitiously named herein as a DOE was legally responsible, negligently, wantonly, recklessly, tortuously, or in some other actionable manner, for the events and happenings, or lack thereof, hereinafter referred to, and thereby proximately caused the injuries and damages to Plaintiffs as hereinafter alleged.  Plaintiffs will seek leave of court to amend this Complaint to insert the true names and/or capacities of such fictitiously named defendants when the same have been ascertained.

14. Plaintiffs are informed and believe and thereupon allege that at all times mentioned herein, Defendants, and each of them, including DOES 1 through 100, inclusive, were the agents, servants, employees, alter egos, and/or joint venturers of their codefendants, and were as such acting within the course, scope, and authority of said agency, servancy, employment, alter ego, and/or joint

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

[1019115]

venture, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, employee, alter ego, and/or joint venture, and that each and every defendant has ratified and approved the acts of his or her agents, servants, employees, alter egos, and/or joint venturers by and through its officers, directors, and/or managing agents.

15.   THE RESIDENCES AT ROYAL BELLINGHAM INC. and DOES 1 through 100, inclusive, will hereafter be collectively referred to as "Defendants".

## **GENERAL ALLEGATIONS**

16.   Under the provisions of <u>Welfare and Institution Code</u> section 15610.27, while a resident/tenant at Defendant's facility NORA VASQUEZ ACEBES was at all times mentioned an elder adult, and Defendant was a caretaker in a trust relationship as defined in <u>Welf. & Inst. Code</u> section 15610.17. As a resident/tenant at Defendant's facility, NORA VASQUEZ ACEBES required extensive assistance with her activities of daily living. NORA VASQUEZ ACEBES was dependent on Defendant and DOES 1-100, and each of them, for her most basic needs, including mobility, nutrition, hydration, hygiene, and personal care.

17.   Plaintiffs are informed and believe and thereupon allege that prior to January of 2021, while NORA VASQUEZ ACEBES was a resident/tenant of Defendant's facility, she received substandard care with respect to her nourishment and general treatment.  Further, that at this time cases of COVID-19 were present at Defendant's facility and that Defendant knew or should have known that COVID-19 was present in Defendant's facility.

18.   The above-entitled action is not based upon the purposeful allocation or administration of a Covered Countermeasure, as that term is defined in the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d and 247d-6e (the "PREP Act").  Rather, it is based on the recklessness and neglect of Defendants in the operation of their facility, and in their care of the Decedent, as described herein.

19.   On or about January 6, 2021, while under care and treatment of Defendants, NORA VASQUEZ ACEBES tested positive for Covid-19.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

[1019115]

20. On or about January 6, 2021, Defendant transferred NORA VASQUEZ ACEBES to Providence St. Joseph Medical Center for treatment.

21. While at Providence St. Joseph Medical Center, NORA VASQUEZ ACEBES' condition deteriorated rapidly and passed away on January 18, 2021 as a result of her deteriorated medical condition caused by defendants' conduct.

22. Because NORA VASQUEZ ACEBES was a resident/tenant of Defendants' facility, Defendants and each of them, had a duty under state laws, designed for the protection and benefit of residents like NORA VASQUEZ ACEBES to provide her with twenty-four-hour custodial care, supervision, and a safe home. Defendant's duties included, but were not limited to:

(a) Follow, implement, and adhere to all physicians' orders, pursuant to California Code of Regulations, Title 22, § 72301;

(b) Accurately monitor and record NORA VASQUEZ ACEBES' condition and report changes to her doctor and family, pursuant to California Code of Regulations, Title 22, § 72307;

(c) Maintain accurate records of NORA VASQUEZ ACEBES' condition and treatment, pursuant to the California Code of Regulations, Title 22, §§ 72311 and 72543;

(d) Accord NORA VASQUEZ ACEBES with dignity and respect, and not subject her to abuse or neglect, pursuant to California Code of Regulations, Title 22, § 72315(b);

(e) Maintain nursing and other staffing at levels necessary to meet the needs of NORA VASQUEZ ACEBES, pursuant to California Code of Regulations, Title 22, § 72329;

(f) Follow skilled nursing care standards to maximize the health, safety, and well-being of NORA VASQUEZ ACEBES, pursuant to California Code of Regulations, Title 22, § 72100, et seq.;

(g) Ensure that NORA VASQUEZ ACEBES was free from unnecessary hazards, pursuant to California Code of Regulations, Title 22, § 72637;

(h) Ensure that NORA VASQUEZ ACEBES was free from physical abuse and neglect, pursuant to California Code of Regulations, Title 22, § 72527(a)(9);

(i) Ensure the implementation of the means for protecting the health and safety of NORA VASQUEZ ACEBES.

23.  Plaintiffs are informed and believe and thereupon allege that each and all of the acts and omissions alleged herein were performed by, or are attributable to, all Defendants, each acting as the agent for the other, with legal authority to act on the other's behalf.

24.  At all times mentioned herein, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all times mentioned herein, the Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

25.  That in instructing, directing, and mandating the activities alleged herein, doing the acts or omissions alleged herein, Defendants and their officers, directors, and/or employees, knew or in the exercise of reasonable caution should have known, that they were violating state regulations in the operation of skilled nursing facilities in the State of California.

26.  Further, Defendants and their officers, directors, and/or employees, made a conscious and purposeful decision to ignore and violate state regulations governing the operation of a skilled nursing facility for the sole and express purpose of maximizing profit and corresponding bonuses to these individuals and others in management positions.

27.  The Defendants, by and through their officers, directors, and/or employees, were fully aware that their conduct and practice of maximizing profit at the expense of the legally mandated care to be provided to an elder in a skilled nursing facility in the State of California, would and did in fact injure elders, including NORA VASQUEZ ACEBES.

28.  Despite this knowledge, Defendants and their officers, directors, and/or employees, directed said course of conduct with a callous indifference to the pain and suffering they were, and are, inflicting upon elders, including NORA VASQUEZ ACEBES.

29.  At all times relevant to this action, Defendants had the care and custody of NORA VASQUEZ ACEBES in that she resided at Defendant's facility on a 24-hour basis as a total care patient and as such were "Care Custodians" as defined in the California Welf. & Inst. Code.

30.  In owning, operating, managing, and/or supervising Defendant's facility, Defendants, and each of them, held themselves out to the general public, and NORA VASQUEZ ACEBES, in particular, as being in compliance with all applicable state laws and regulations.

31.   At all times mentioned herein, Defendants, and each of them, were responsible for the care, custody, safety, and well-being of NORA VASQUEZ ACEBES who was a patient of Defendants.  Upon information and belief, it is alleged that the acts of Defendants, and each of them, were a substantial factor in causing personal injury, emotional distress, and economic damages to Plaintiffs herein, as well as the death of NORA VASQUEZ ACEBES.

**FIRST CAUSE OF ACTION**

**(BREACH OF IMPLIED WARRANTY OF HABITABILITY**

**As Against THE RESIDENCES AT ROYAL BELLINGHAM INC., and DOES 1 through**

**100, inclusive)**

32.   Plaintiffs incorporates by reference each and every allegation contained in preceding and foregoing paragraphs as though fully set forth herein.

33.   Prior to decedent entering Defendants' facility as a resident/tenant, all Defendants, including DOES 1 through 100, impliedly warranted that the premises were habitable.  At all relevant times, Plaintiffs/decedent continued to make payments to be a resident/tenant of the facility.

34.   Defendants, including DOES 1-100, and each of them were made aware of the dangerous conditions on the subject property as alleged herein, including but not limited to the danger and presence of COVID-19, and although Defendants had sufficient time to make the premises safe, Defendants failed to take any action to make the premises safe.

35.   As a proximate result of Defendants, including DOES 1-100, breach of their implied warranty of habitability and their failure to take any corrective action, decedent died, and Plaintiffs seek damages as set forth herein.  Furthermore, Plaintiffs seek damages for payments made to Defendants to be a resident/tenant of the facility during all times Defendants breached the warranty of habitability.

///

///

///

///

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

[1019115]

**SECOND CAUSE OF ACTION**

**ELDER ABUSE AND NEGLECT**

**[WELFARE & INSTITUTION CODE § 15600 *et seq*]**

**(As Against THE RESIDENCES AT ROYAL BELLINGHAM INC., and DOES 1 through 100, inclusive)**

36.   Plaintiffs hereby reallege and incorporate by reference each and every preceding paragraph as though fully set forth herein.

37.   Upon information and belief, Defendants, acted with reckless neglect and disregard towards Decedent NORA VASQUEZ ACEBES.

38.   At all times mentioned herein, Decedent was a member of the class of persons intended to be protected by the Elder Abuse and Dependent Adult Civil Protection Act (Welfare and Institutions Code § 15600 *et seq*).

39.   At all times mentioned herein, Defendants owned, operated, managed and/or worked at a skilled nursing and long-term care facility as defined in Welf. & Inst. Code § 15610.47, health practitioners as defined in Welf. & Inst. Code § 15610.37, and/or care custodians as defined in Welf & Inst. Code § 15610.17.

40.   Decedent was a resident/tenant/patient of Defendants and the staff, physicians, employees, and agents thereof and was under the care of Defendants.  During the time that Decedent was a resident/tenant/patient of Defendants, Defendants were entrusted with care and/or custodian care of Decedent, and thus Defendants owed Decedent a duty of care pursuant to common law as licensed healthcare providers and/or had specific duties under state regulations, which were designated by the legislature to provide for the safety of residents/patients, including Decedent.

41.   Defendants continually, willfully, and recklessly breached their duties to Decedent. These acts and omissions by the Defendants resulted in Decedent becoming ill, as well as other harms including contracting a COVID-19 infection, all of which contributed to decedent's death. Specifically, the general neglect of decedent, as well as the separate failure to take measures to protect decedent from contracting Covid-19, were all contributing factors in causing decedent's

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

[1019115]

demise.  In particular, and without limiting the generality of the foregoing, Defendants acted with conscious disregard to Decedent's rights, health, and safety, and failed to:

(a)   Ensure Decedent was not subject to acts of neglect;

(b)   Ensure the premises of Defendants were in a non-dangerous condition, free of hazards and/or potential harms;

(c)   Recklessly concealing from Plaintiffs the neglect and reckless endangerment of Decedent;

(d)   Provide Decedent medical treatment;

(e)   Follow, implement, and adhere to all guidelines on how to protect and treat Decedent in light of the risk of COVID-19;

(f)   Accurately monitor and record Decedent's condition and to report changes to her doctor, family and/or decedent's legal representative;

(g)   Timely initiate emergency corrective treatment in light of Decedent's obvious medical distress and high-risk of future distress;

(h)   Provide care in a non-negligent manner;

(i)   Provide staff with adequate training;

(j)   Isolate suspected or identified COVID-19 carriers from staff or residents;

(k)   Disclose known or suspected COVID-19 carriers to staff and/or residents and their families;

(l)   Take precautions to ensure that Decedent did not contract COVID-19;

(m)   Ensure Decedent was not cohabitating in the same room with persons infected with Covid-19;

(n)   Failed to keep sufficient staffing levels;

(o)   Defendants allowed Decedent to contract Covid-19 at Defendant's facility as a result of the allegations set forth herein.

42.   The acts and/or omissions of Defendants, as stated above, were reckless and done in conscious disregard for the rights and safety of Decedent in light of their failure to recognize that Decedent was being subject to these acts of reckless neglect.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

[1019115]

43.   As a direct and proximate result of the conduct of Defendants, Plaintiffs were compelled to and did employ the services of hospitals, physicians, surgeons, nurses, and the like to care for and treat Decedent, and did incur hospital, medical, professional, and incidental expenses, the exact amount of which expenses will be stated according to proof, pursuant to California <u>Code of Civil Procedure</u> section 425.10.

44.   As a direct and proximate cause of the Defendants' conduct, Plaintiffs sustained the loss of love, affection, society, service, assistance, protection, comfort, support, right of support, expectations of future support and counseling, companionship, solace, and moral support, as well as other benefits and assistance NORA VASQUEZ ACEBES, all to their general damage in a sum in excess of $50,000.00, the exact amount of which expenses will be stated according to proof, pursuant to California <u>Code of Civil Procedure</u> section 425.10.

45.   As a direct and proximate result of the Defendants' conduct, Plaintiffs have incurred funeral and burial expenses in an amount to be stated at the time of trial.

46.   As a direct and proximate result of the Defendants' conduct, which was carried out with oppression, fraud by concealment, malice and recklessness, Plaintiffs are entitled to enhanced remedies, including attorney's fees, costs, the pre-death pain and suffering and disfigurement of NORA VASQUEZ ACEBES (including but not limited pursuant to California <u>Code of Civil Procedure</u> section 377.34(b)), and punitive damages.

## THIRD CAUSE OF ACTION

### NEGLIGENCE/NEGLIGENCE *PER SE*

### (As Against THE RESIDENCES AT ROYAL BELLINGHAM INC., and DOES 1 through 100, inclusive)

47.   Plaintiffs hereby reallege and incorporate by reference each and every preceding paragraph as if fully set forth herein.

48.   Defendants, by and through their management, agents, and employees, were charged with the care and custody of Decedent, an elder and dependent adult suffering from physical limitations and mental disease.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

49.   Defendants were under a statutory duty to exercise reasonable care to provide assistance and prevent harm to Decedent and to comply with all applicable state laws and regulations governing skilled nursing facilities in California, including but not limited to:

(a)   Cal Health & Safety Code § 1279.6 (safety plan);

(b)   Cal Health & Safety Code § 1337.1 (adequate training);

(c)   Cal Health & Safety Code § 1599.1(a) (adequate and qualified staff);

(d)   22 CCR § 72311 (care plan and prompt reporting);

(e)   22 CCR § 72315 (required services);

(f)   22 CCR § 72329(a) and 75210(e) (adequate staffing);

(g)   22 CCR § 72517 (adequate training);

(h)   22 CCR § 72523 (adequate policies and procedures);

(i)   22 CCR § 72527(a)(11) (respect, dignity, and without abuse);

(j)   22 CCR § 72537 (reporting of communicable diseases);

(k)   22 CCR § 72539 (reporting of outbreaks); and

(l)   22 CCR § 72541 (reporting of unusual occurrences).

50.   Defendants continually, willfully, and recklessly breached their duties to Decedent by, among other acts and omissions, violating these laws and regulations.  These acts and omissions by the Defendants were a contributing factor in Decedent's severe injury, illness, and ultimate death.

51.   As a direct and proximate result of Defendants' conduct, Plaintiffs were compelled to and did employ the services of hospitals, physicians, surgeons, nurses, and the like to care for and treat Decedent, and did incur hospital, medical, professional, and incidental expenses, the exact amount of which expenses will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

52.   As a direct and proximate cause of Defendants' conduct, Plaintiffs sustained the loss of love, affection, society, service, assistance, protection, comfort, support, right of support, expectations of future support and counseling, companionship, solace, and moral support, as well as other benefits and assistance, of NORA VASQUEZ ACEBES, as well as the pre-death pain and suffering and disfigurement of NORA VASQUEZ ACEBES (including but not limited pursuant to

California <u>Code of Civil Procedure</u> section 377.34(b)), and punitive damages, all to their general damage in a sum in excess of $50,000.00, the exact amount of which expenses will be stated according to proof, pursuant to California <u>Code of Civil Procedure</u> section 425.10.

53.   As a direct and proximate result of Defendants' conduct, Plaintiffs have incurred funeral and burial expenses in an amount to be stated at the time of trial.

**<u>FOURTH CAUSE OF ACTION</u>**

**VIOLATION OF PATIENTS' BILL OF RIGHTS**

**[HEALTH & SAFETY CODE § 1430(b)]**

**(As Against THE RESIDENCES AT ROYAL BELLINGHAM INC., and DOES 1 through 100, inclusive)**

54.   Plaintiffs hereby reallege and incorporate by reference each and every preceding paragraph as if fully set forth herein.

55.   From the time that Decedent was first admitted into Defendants' facility, Defendants, by and through their management, agents, and employees, were charged with the care and custody of Decedent, an elder and dependent adult suffering from physical and mental limitations.

56.   Defendants owed a duty to Decedent to ensure that Decedent's patient rights were not violated.  (California <u>Health and Safety Code</u> § 1430(b.).)  Decedent's patient rights are established in section 72527 of Title 22 of the California Code of Regulation.  These patient rights include, but are not limited to:

(a)   To be free from mental and physical abuse;

(b)   To be treated with consideration, respect and full recognition of dignity; and

(c)   That a facility provide an adequate number of qualified personnel to carry out all functions of the facility.

57.   Defendants violated the above referenced rights when Defendants failed to provide medical measures.  In particular, and without limited to generality of the foregoing, Defendants violated Decedent's rights when they failed to:

(a)   Ensure Decedent was not subject to acts of neglect;

(b) Ensure the premises of the facility were in a non-dangerous condition, free of hazards and/or potential harms;

(c) Recklessly concealing from Plaintiffs the neglect and reckless endangerment of Decedent;

(d) Provide Decedent medical treatment;

(e) Follow, implement, and adhere to guidelines on how to treat Decedent in light of the risk of COVID-19;

(f) Accurately monitor and record Decedent's condition and to report changes to her doctor and her legal representative;

(g) Timely initiate emergency corrective treatment in light of Decedent's obvious medical distress and high-risk of future distress;

(h) Provide care in a non-negligent manner.

58. As a direct and proximate result of the breach of these duties by Defendants, NORA VASQUEZ ACEBES suffered personal injury, emotional pain, suffering, and death.

59. As a direct and proximate result of the conduct of Defendants, Plaintiffs were compelled to and did employ the services of hospitals, physicians, surgeons, nurses, and the like to care for and treat Decedent, and did incur hospital, medical, professional, and incidental expenses, the exact amount of which expenses will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

60. As a direct and proximate cause of the conduct of Defendants, Plaintiffs sustained the loss of love, affection, society, service, assistance, protection, comfort, support, right of support, expectations of future support and counseling, companionship, solace, and moral support, as well as other benefits and assistance, of NORA VASQUEZ ACEBES, as well as the pre-death pain and suffering and disfigurement of NORA VASQUEZ ACEBES (including but not limited pursuant to California Code of Civil Procedure section 377.34(b)), and punitive damages, all to their general damage in a sum in excess of $50,000.00, the exact amount of which expenses will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

[1019115]

61.   As a direct and proximate result of the conduct of Defendants, Plaintiffs have incurred funeral and burial expenses in an amount to be stated at the time of trial.

62.   Because the aforementioned conduct of the Defendants were carried out in a deliberate, cold, callous, and intentional manner in order to injure and damage Decedent or, in the alternative, was despicable conduct carried on with a willful and conscious disregard for the rights and safety of others and subjected Decedent to cruel and unjust hardship in conscious disregard for her rights, Plaintiffs request the assessment of punitive damages against Defendants in an amount according to proof.

63.   Also due to the aforementioned conduct of the Defendants which was carried out in a deliberate, cold, callous, and intentional manner in order to injure and damage decedent, Plaintiffs also are entitled to attorney's fees and costs, as well as decedent's pain and suffering prior to her death.

## FIFTH CAUSE OF ACTION

### WRONGFUL DEATH

### (As Against THE RESIDENCES AT ROYAL BELLINGHAM INC., and DOES 1 through 100, inclusive)

64.   Plaintiffs hereby reallege and incorporate by reference each and every preceding paragraph as if fully set forth herein.

65.   Decedent NORA VASQUEZ ACEBES died on January 18, 2021, as an ultimate result of the acts and omissions of the Defendants as set forth above.

66.   Defendants owed duties to protect Decedent from the abuse and neglect alleged herein, as aforesaid, which ultimately caused Decedent's death.  However, Defendants breached those duties by failing to prevent Decedent from contracting and becoming ill, ultimately leading to her death.

67.   The breaches of Defendants caused injury and death to Decedent.  Decedent would not have suffered death but for the conduct and breaches of duty of Defendants.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

[1019115]

68.  As a direct and proximate cause of the conduct of Defendants, Plaintiffs sustained the loss of love, affection, society, service, assistance, protection, comfort, support, right of support, expectations of future support and counseling, companionship, solace, and moral support, as well as other benefits and assistance, of NORA VASQUEZ ACEBES, as well as the pre-death pain and suffering and disfigurement of NORA VASQUEZ ACEBES (including but not limited pursuant to California Code of Civil Procedure section 377.34(b)), and punitive damages, all to their general damage in a sum in excess of $50,000.00, the exact amount of which expenses will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

69.  As a direct and proximate result of the conduct of Defendants, Plaintiffs have incurred funeral and burial expenses in an amount to be stated at the time of trial.

## SIXTH CAUSE OF ACTION

### CONCEALMENT

**(As Against THE RESIDENCES AT ROYAL BELLINGHAM INC., and DOES 1 through 100, inclusive)**

70.  Plaintiffs incorporate herein by reference all of the prior allegations as set forth in detail, above.

71.  During the various time frames identified herein, decedent NORA VASQUEZ ACEBES was a resident/tenant at Defendant's facility and was treated by various staff, physicians and healthcare providers at Defendant's facility, and as such, a fiduciary relationship was formed between plaintiffs and/or plaintiffs' decedent with defendants herein, and each of them. As such, defendants were under a fiduciary duty to disclose material facts related to the status of the health and well-being of NORA VASQUEZ ACEBES including but not limited to whether NORA VASQUEZ ACEBES had been exposed to and/or contracted COVID-19 while at Defendant's facility, or was being exposed to an unreasonable risk of harm based on exposure to infected residents and staff, or whether she was otherwise physically ill.

72.  Plaintiffs are informed and believe, and thereon allege, that defendants and each of them failed to disclose, concealed and/or suppressed critical and important facts NORA VASQUEZ

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

[1019115]

ACEBES' health, safety and overall well-being, including but not limited to NORA VASQUEZ ACEBES' being exposed to an unreasonable risk of harm based on exposure to infected residents and staff and exposure to and/or contracting of COVID-19 within Defendant's facility.

73. Defendants, and each of them, repeatedly concealed material and critical facts from Plaintiffs about the spread and prevalence of the COVID-19 virus within the facility, as well as the lack of precautions being taken to keep NORA VASQUEZ ACEBES safe from infection.

74. Defendants, and each of them, provided Plaintiffs with the assurances of NORA VASQUEZ ACEBES' health, including that NORA VASQUEZ ACEBES was in a safe environment where every precaution was being taken to eliminate the risk of harm from COVID-19, and that she had not been exposed to and/or contracted COVID-19, however, at the same time defendants knew that such assurances were untrue and that NORA VASQUEZ ACEBES had been exposed to and/or contracted COVID-19 and/or was being recklessly exposed to risk of harm.

75. At the time of these failures to disclose and concealment of critical and material facts, plaintiffs were ignorant of the existence of the facts that defendants concealed and failed to disclose. If plaintiffs or NORA VASQUEZ ACEBES had been aware of the existence of the facts concealed by defendants, particularly that NORA VASQUEZ ACEBES was being recklessly exposed to the virus through other infected residents and staff, and/or that she was exposed to and/or contracted COVID-19 at Defendant's facility, plaintiffs' decedent would not have continued as a resident/tenant and patient at Defendant's facility and would have sought residence as well as medical treatment and care elsewhere. Such reliance by plaintiff or plaintiffs' decedent was justified given the fact that Defendant's facility included physicians and/or staff members who purported to have specialized skills in administering the care and treatment to decedent and others such as decedent. In addition, based on the special and fiduciary relationship created, the defendants were under a duty to disclose relevant facts concerning plaintiffs' decedent's medical condition and treatment.

76. As a proximate result of defendants' acts of concealment and suppression of critical and material information, Plaintiff did not remove NORA VASQUEZ ACEBES from Defendant's

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

[1019115]

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

facility, resulting in NORA VASQUEZ ACEBES becoming exposed to and ultimately infected with COVID-19 and subsequently succumbing to her injuries.

77.    As a proximate result of defendants' acts of concealment and suppression of critical and material information, plaintiffs have suffered damages as alleged herein.

78.    As a direct and proximate result of the above-described conduct of defendants, which caused  the deaths of decedent,  plaintiff has sustained the loss of love, affection, society, service, comfort, support, right of support, expectations of future support, and counseling, companionship, solace and mental support, as well as other benefits and assistance, of the decedent, as well as the pre-death pain and suffering and disfigurement of NORA VASQUEZ ACEBES (including but not limited pursuant to California Code of Civil Procedure section 377.34(b)), and punitive damages, all to the general and special damage in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, in accordance with Section 425.10 of the California Code of Civil Procedure.

79.    As a further direct and proximate result of the above-described conduct of the defendants, plaintiffs have incurred medical, funeral, and/or burial expenses in an amount to be stated according to proof, pursuant to Section 425.10 of the California Code of Civil Procedure.

80.    The concealment by the defendants, and each of them, was made in the course of the advice, care and treatment given to NORA VASQUEZ ACEBES and was a substantial factor in causing all of the damages alleged herein.

81.    Because the aforementioned conduct of the Defendants were carried out in a deliberate, cold, callous, and intentional manner in order to injure and damage Decedent or, in the alternative, was despicable conduct carried on with a willful and conscious disregard for the rights and safety of others and subjected Decedent to cruel and unjust hardship in conscious disregard for her rights, Plaintiffs request the assessment of punitive damages against Defendants in an amount according to proof.

82.    Also due to the aforementioned conduct of the Defendants which was carried out in a deliberate, cold, callous, and intentional manner in order to injure and damage decedent, Plaintiffs

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

1  also are entitled to attorney's fees and costs, as well as decedent's pain and suffering prior to her

2  death.

3

4          WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as

5  follows:

6      1.  For special damages according to proof;

7      2.  For general damages according to proof;

8      3.  For costs of suit and attorneys' fees herein incurred pursuant to <u>Welf. & Inst. Code</u>

9          <u>§15657 *et seq*</u>;

10     4.  For pre-judgment and post-judgment interest, if any, incurred;

11     5.  For reimbursement of medical expenses;

12     6.  For reimbursement of funeral and burial expenses;

13     7.  For the pre-death pain and suffering of decedent NORA VASQUEZ ACEBES;

14     8.  For pre-death pain, suffering, and disfigurement of decedent NORA VASQUEZ

15         ACEBES according to proof pursuant to <u>California Code of Civil Procedure § 377.34</u>;

16     9.  For punitive damages; and

17     10. For such other and further relief as the Court may deem proper.

18

19

20  DATED: January 14, 2022                    GREENE BROILLET & WHEELER, LLP

21

22

23                                              Robert D. Jarchi, Esq.
                                                Ivan Puchalt, Esq.
24                                              Attorneys for Plaintiffs

25

26

27

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

[1019115]                         COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1

## **DEMAND FOR JURY TRIAL**

2

3          Plaintiffs hereby demand a trial by jury of all causes of action.

4

5     DATED: January 14, 2022                    GREENE BROILLET & WHEELER, LLP

6

7                                                _____
                                                 Robert D. Jarchi, Esq.
8                                                Ivan Puchalt, Esq.
                                                 Attorneys for Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[1019115]

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

EXHIBIT B

GREENE BROILLET & WHEELER, LLP
LAWYERS
222 N. PACIFIC COAST HIGHWAY, SUITE 2100
P.O. BOX 955
EL SEGUNDO, CALIFORNIA 90245
TEL. (310) 576-1200
FAX. (310) 576-1220

(SPACE BELOW FOR FILING STAMP ONLY)

ROBERT D. JARCHI, SBN 204168 (rjarchi@gbw.law)
IVAN PUCHALT, SBN 245128 (ipuchalt@gbw.law)

Attorneys for ___Plaintiffs_____

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

ESTATE OF NORA VASQUEZ ACEBES, by and through its Successor-in-Interest ARLENE ELAMPARO; ARLENE ELAMPARO, an individual; EDGAR ACEBES, an individual; JOCELYN ACEBES, an individual; ARNOLD ACEBES, an individual; ANNA DESHONG, an individual,

Plaintiffs,

vs.

THE RESIDENCES AT ROYAL BELLINGHAM INC.; GLENDA SEACHON, an individual (sued as a nominal defendant); and DOES 1 through 100, inclusive,

Defendants.

CASE NO. 22STCV01705

**FIRST AMENDED COMPLAINT FOR DAMAGES**
1. **Breach of implied warranty of habitability**
2. **Elder Abuse and Neglect (Welfare and Institutions Code §15600, et seq.)**
3. **Negligence/Negligence *Per Se***
4. **Wrongful Death**
5. **Concealment**

**DEMAND FOR JURY TRIAL**

**(Amount in Controversy Exceeds $25,000)**

COME NOW the plaintiffs ESTATE OF NORA VASQUEZ ACEBES, by and through its successor-in-interest ARLENE ELAMPARO; ARLENE ELAMPARO, an individual; EDGAR ACEBES, an individual; JOCELYN ACEBES, an individual; ARNOLD ACEBES, an individual; ANNA DESHONG, an individual (hereinafter "Plaintiffs"), and for causes of action against defendants THE RESIDENCES AT ROYAL BELLINGHAM INC.; GLENDA SEACHON, an individual (sued as a nominal defendant) and DOES 1 through 100, inclusive, and each of them, allege as follows:

[1068701]

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

**PARTIES**

1.   Plaintiff ARLENE ELAMPARO is the natural born child and lawful heir of Decedent NORA VASQUEZ ACEBES (hereinafter referred to at times as "Decedent").  At all times relevant herein, ARLENE ELAMPARO is and was a resident of Riverside County, State of California.

2.   Plaintiff EDGAR ACEBES is the natural born child and lawful heir of Decedent NORA VASQUEZ ACEBES (hereinafter referred to at times as "Decedent").  At all times relevant herein, EDGAR ACEBES is and was a resident of Australia.

3.   Plaintiff JOCELYN ACEBES is the natural born child and lawful heir of Decedent NORA VASQUEZ ACEBES (hereinafter referred to at times as "Decedent").  At all times relevant herein, JOCELYN ACEBES is and was a resident of Australia.

4.   Plaintiff ARNOLD ACEBES is the natural born child and lawful heir of Decedent NORA VASQUEZ ACEBES (hereinafter referred to at times as "Decedent").  At all times relevant herein, ARNOLD ACEBES is and was a resident of Los Angeles County, State of California.

5.   Plaintiff ANNA DESHONG is the natural born child and lawful heir of Decedent NORA VASQUEZ ACEBES (hereinafter referred to at times as "Decedent").  At all times relevant herein, ANN MARIE DESHONG is and was a resident of Riverside County, State of California.

6.   Nominal defendant GLENDA SEACHON is the natural born child and lawful heir of Decedent NORA VASQUEZ ACEBES (hereinafter referred to at times as "Decedent").  At all times relevant herein, GLENDA SEACHON is and was a resident of Canada.   Nominal defendant GLENDA SEACHON's consent was not obtained to be joined as a Plaintiff, and she is therefore named herein as a nominal defendant pursuant to California <u>Code of Civil Procedure</u> § 382.

7.   Plaintiff ARLENE ELAMPARO is the Decedent's successor-in-interest pursuant to California <u>Code of Civil Procedure</u> § 377.10 and has declared herself as such as required by California <u>Code of Civil Procedure</u> § 377.32.

8.   Defendant THE RESIDENCES AT ROYAL BELLINGHAM INC. (hereinafter "Defendant") is a California Corporation with its principal place of business in the County of Los Angeles, State of California.

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

[1068701]

9.   Defendants and DOES 1 through 100, inclusive, were, at all times relevant herein, in the business of providing long-term custodial care as a 24-hour skilled nursing facility as defined in Section 1250(c) of the <u>Health and Safety Code</u> in the County of Los Angeles and owned/controlled said property.

10.   THE RESIDENCES AT ROYAL BELLINGHAM INC. is and at relevant times herein was licensed under the Department of Public Health and was therefore subject to the requirements of state law regarding the operation of skilled nursing facilities.  In doing the acts alleged herein, THE RESIDENCES AT ROYAL BELLINGHAM INC. acted at the implicit and/or explicit instruction of, and with the express and/or implied authority of the officers, administrators, directors, and operators of THE RESIDENCES AT ROYAL BELLINGHAM INC.

11.   Decedent was a resident/tenant of Defendant's property from approximately 2015 through the time of her death in 2021, when she was 88 years old.

12.   Plaintiffs are informed and believe and thereupon allege that Defendants DOES 1 through 100, inclusive, were, at all times relevant herein, individuals and/or entities rendering care and services to Decedent and whose conduct caused the injuries and damages alleged herein.

13.   The true names and/or capacities, whether individual, corporate, associate or otherwise, of defendants, and each of them, DOES 1 through 100, inclusive, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names.  Plaintiffs are informed and believe and thereupon allege that each defendant fictitiously named herein as a DOE was legally responsible, negligently, wantonly, recklessly, tortuously, or in some other actionable manner, for the events and happenings, or lack thereof, hereinafter referred to, and thereby proximately caused the injuries and damages to Plaintiffs as hereinafter alleged.  Plaintiffs will seek leave of court to amend this Complaint to insert the true names and/or capacities of such fictitiously named defendants when the same have been ascertained.

14.   Plaintiffs are informed and believe and thereupon allege that at all times mentioned herein, Defendants, and each of them, including DOES 1 through 100, inclusive, were the agents, servants, employees, alter egos, and/or joint venturers of their codefendants, and were as such acting within the course, scope, and authority of said agency, servancy, employment, alter ego, and/or joint

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

[1068701]

venture, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, employee, alter ego, and/or joint venture, and that each and every defendant has ratified and approved the acts of his or her agents, servants, employees, alter egos, and/or joint venturers by and through its officers, directors, and/or managing agents.

15.   THE RESIDENCES AT ROYAL BELLINGHAM INC. and DOES 1 through 100, inclusive, will hereafter be collectively referred to as "Defendants".

## **GENERAL ALLEGATIONS**

16.   Under the provisions of Welfare and Institution Code section 15610.27, while a resident/tenant at Defendant's facility NORA VASQUEZ ACEBES was at all times mentioned an elder adult, and Defendant was a caretaker in a trust relationship as defined in Welf. & Inst. Code section 15610.17. As a resident/tenant at Defendant's facility, NORA VASQUEZ ACEBES required extensive assistance with her activities of daily living. NORA VASQUEZ ACEBES was dependent on Defendant and DOES 1-100, and each of them, for her most basic needs, including mobility, nutrition, hydration, hygiene, and personal care.

17.   Plaintiffs are informed and believe and thereupon allege that prior to January of 2021, while NORA VASQUEZ ACEBES was a resident/tenant of Defendant's facility, she received substandard care with respect to her nourishment and general treatment.  Further, that at this time cases of COVID-19 were present at Defendant's facility and that Defendant knew or should have known that COVID-19 was present in Defendant's facility.

18.   The above-entitled action is not based upon the purposeful allocation or administration of a Covered Countermeasure, as that term is defined in the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d and 247d-6e (the "PREP Act").  Rather, it is based on the recklessness and neglect of Defendants in the operation of their facility, and in their care of the Decedent, as described herein.

19.   On or about January 6, 2021, while under care and treatment of Defendants, NORA VASQUEZ ACEBES tested positive for Covid-19.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

- 4 -

20.   On or about January 6, 2021, Defendant transferred NORA VASQUEZ ACEBES to Providence St. Joseph Medical Center for treatment.

21.   While at Providence St. Joseph Medical Center, NORA VASQUEZ ACEBES' condition deteriorated rapidly and passed away on January 18, 2021 as a result of her deteriorated medical condition caused by defendants' conduct.

22.   Because NORA VASQUEZ ACEBES was a resident/tenant of Defendants' facility, Defendants and each of them, had a duty under state laws, designed for the protection and benefit of residents like NORA VASQUEZ ACEBES to provide her with twenty-four-hour custodial care, supervision, and a safe home.   Defendant's duties included, but were not limited to:

(a)   Follow, implement, and adhere to all physicians' orders, pursuant to California Code of Regulations, Title 22, § 72301;

(b)   Accurately monitor and record NORA VASQUEZ ACEBES' condition and report changes to her doctor and family, pursuant to California Code of Regulations, Title 22, § 72307;

(c)   Maintain accurate records of NORA VASQUEZ ACEBES' condition and treatment, pursuant to the California Code of Regulations, Title 22, §§ 72311 and 72543;

(d)   Accord NORA VASQUEZ ACEBES with dignity and respect, and not subject her to abuse or neglect, pursuant to California Code of Regulations, Title 22, § 72315(b);

(e)   Maintain nursing and other staffing at levels necessary to meet the needs of NORA VASQUEZ ACEBES, pursuant to California Code of Regulations, Title 22, § 72329;

(f)   Follow skilled nursing care standards to maximize the health, safety, and well-being of NORA VASQUEZ ACEBES, pursuant to California Code of Regulations, Title 22, § 72100, et seq.;

(g)   Ensure that NORA VASQUEZ ACEBES was free from unnecessary hazards, pursuant to California Code of Regulations, Title 22, § 72637;

(h)   Ensure that NORA VASQUEZ ACEBES was free from physical abuse and neglect, pursuant to California Code of Regulations, Title 22, § 72527(a)(9);

(i)   Ensure the implementation of the means for protecting the health and safety of NORA VASQUEZ ACEBES.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

23.   Plaintiffs are informed and believe and thereupon allege that each and all of the acts and omissions alleged herein were performed by, or are attributable to, all Defendants, each acting as the agent for the other, with legal authority to act on the other's behalf.

24.   At all times mentioned herein, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all times mentioned herein, the Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

25.   That in instructing, directing, and mandating the activities alleged herein, doing the acts or omissions alleged herein, Defendants and their officers, directors, and/or employees, knew or in the exercise of reasonable caution should have known, that they were violating state regulations in the operation of skilled nursing facilities in the State of California.

26.   Further, Defendants and their officers, directors, and/or employees, made a conscious and purposeful decision to ignore and violate state regulations governing the operation of a skilled nursing facility for the sole and express purpose of maximizing profit and corresponding bonuses to these individuals and others in management positions.

27.   The Defendants, by and through their officers, directors, and/or employees, were fully aware that their conduct and practice of maximizing profit at the expense of the legally mandated care to be provided to an elder in a skilled nursing facility in the State of California, would and did in fact injure elders, including NORA VASQUEZ ACEBES.

28.   Despite this knowledge, Defendants and their officers, directors, and/or employees, directed said course of conduct with a callous indifference to the pain and suffering they were, and are, inflicting upon elders, including NORA VASQUEZ ACEBES.

29.   At all times relevant to this action, Defendants had the care and custody of NORA VASQUEZ ACEBES in that she resided at Defendant's facility on a 24-hour basis as a total care patient and as such were "Care Custodians" as defined in the California Welf. & Inst. Code.

30.   In owning, operating, managing, and/or supervising Defendant's facility, Defendants, and each of them, held themselves out to the general public, and NORA VASQUEZ ACEBES, in particular, as being in compliance with all applicable state laws and regulations.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

31.   At all times mentioned herein, Defendants, and each of them, were responsible for the care, custody, safety, and well-being of NORA VASQUEZ ACEBES who was a patient of Defendants.  Upon information and belief, it is alleged that the acts of Defendants, and each of them, were a substantial factor in causing personal injury, emotional distress, and economic damages to Plaintiffs herein, as well as the death of NORA VASQUEZ ACEBES.

## **FIRST CAUSE OF ACTION**

### **(BREACH OF IMPLIED WARRANTY OF HABITABILITY**

### **As Against THE RESIDENCES AT ROYAL BELLINGHAM INC., and DOES 1 through 100, inclusive)**

32.   Plaintiffs incorporates by reference each and every allegation contained in preceding and foregoing paragraphs as though fully set forth herein.

33.   Prior to decedent entering Defendants' facility as a resident/tenant, all Defendants, including DOES 1 through 100, impliedly warranted that the premises were habitable.  At all relevant times, Plaintiffs/decedent continued to make payments to be a resident/tenant of the facility.

34.   Defendants, including DOES 1-100, and each of them were made aware of the dangerous conditions on the subject property as alleged herein, including but not limited to the following:

(a)   The danger and presence of active COVID-19 infections on the premises;

(b)   The fact that staffing shortages contributed to staff spreading the Covid disease between infected and non-infected residents;

(c)   The failure to separate and isolate staff and residents who were infected with Covid-19 from each other;

(d)   The failure to use sanitary PPE, especially by staff who came into decedent's room after being in other parts of the facility where they were in contact with the Covid-19 virus;

(e)   The lack of an effective plan or protocol to isolate residents who were infected with Covid-19;

(f)   The lack of testing to ensure that staff were not working while infected with Covid-19;

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

(g)   Allowing unsafe contact to occur between staff and decedent Ms. Acebes.  For example, on one occasion the family was on a zoom call with Ms. Acebes and witnessed a nurse wearing a yellow isolation gown, who had been in other parts of the facility presumably contaminated with Covid, go up to Ms. Acebes and give her a hug.

(h)   Plaintiff Arlene Elamparo, prior to the Covid pandemic, complained on more than one occasion about the facility's failure to clean her mother's room properly, thereby neglecting to provide a safe and sanitary environment.

35.   As a proximate result of Defendants, including DOES 1-100, breach of their implied warranty of habitability and their failure to take any corrective action, decedent died, and Plaintiffs seek damages as set forth herein.  Furthermore, Plaintiffs seek damages for payments made to Defendants to be a resident/tenant of the facility during all times Defendants breached the warranty of habitability.   Plaintiff ESTATE OF NORA VASQUEZ ACEBES seeks damages for pain and suffering before she passed away as a result of Covid-19.

### SECOND CAUSE OF ACTION

### ELDER ABUSE AND NEGLECT

### [WELFARE & INSTITUTION CODE § 15600 *et seq*]

### (As Against THE RESIDENCES AT ROYAL BELLINGHAM INC., and DOES 1 through 100, inclusive)

36.   Plaintiffs hereby reallege and incorporate by reference each and every preceding paragraph as though fully set forth herein.

37.   Upon information and belief, Defendants, acted with reckless neglect and disregard towards Decedent NORA VASQUEZ ACEBES.

38.   At all times mentioned herein, Decedent was a member of the class of persons intended to be protected by the Elder Abuse and Dependent Adult Civil Protection Act (Welfare and Institutions Code § 15600 *et seq*).

39.   At all times mentioned herein, Defendants owned, operated, managed and/or worked at a skilled nursing and long-term care facility as defined in Welf. & Inst. Code § 15610.47, health

practitioners as defined in <u>Welf. & Inst. Code</u> § 15610.37, and/or care custodians as defined in <u>Welf & Inst. Code</u> § 15610.17.

40.  Decedent was a resident/tenant/patient of Defendants and the staff, physicians, employees, and agents thereof and was under the care of Defendants.  During the time that Decedent was a resident/tenant/patient of Defendants, Defendants were entrusted with care and/or custodian care of Decedent, and thus Defendants owed Decedent a duty of care pursuant to common law as licensed healthcare providers and/or had specific duties under state regulations, which were designated by the legislature to provide for the safety of residents/patients, including Decedent.

41.  Defendants continually, willfully, and recklessly breached their duties to Decedent.  These acts and omissions by the Defendants resulted in Decedent becoming ill, as well as other harms including contracting a COVID-19 infection, all of which contributed to decedent's death.  Specifically, the general neglect of decedent, as well as the separate failure to take measures to protect decedent from contracting Covid-19, were all contributing factors in causing decedent's demise.  In particular, and without limiting the generality of the foregoing, Defendants acted with conscious disregard to Decedent's rights, health, and safety, and failed to:

(a)  Ensure Decedent was not subject to acts of neglect;

(b)  Ensure the premises of Defendants were in a non-dangerous condition, free of hazards and/or potential harms;

(c)  Recklessly concealing from Plaintiffs the neglect and reckless endangerment of Decedent;

(d)  Provide Decedent medical treatment;

(e)  Follow, implement, and adhere to all guidelines on how to protect and treat Decedent in light of the risk of COVID-19;

(f)  Accurately monitor and record Decedent's condition and to report changes to her doctor, family and/or decedent's legal representative;

(g)  Timely initiate emergency corrective treatment in light of Decedent's obvious medical distress and high-risk of future distress;

(h)  Provide care in a non-negligent manner;

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

1        (i)   Provide staff with adequate training;

2        (j)   Isolate suspected or identified COVID-19 carriers from staff or residents;

3        (k)   Disclose known or suspected COVID-19 carriers to staff and/or residents and their

4  families;

5        (l)   Take precautions to ensure that Decedent did not contract COVID-19;

6        (m)   Ensure Decedent was not cohabitating in the same room with persons infected with

7  Covid-19;

8        (n)   Failed to keep sufficient staffing levels;

9        (o)   Defendants allowed Decedent to contract Covid-19 at Defendant's facility as a

10  result of the allegations set forth herein.

11     42.  In addition, and more specifically, Plaintiffs alleged that the following actions and

12  failures were reckless and contributed to decedent's untimely death:

13        (a)   Defendants failed to provide Decedent the Covid-19 vaccine in December 2020,

14  even though other assisted living facilities were able to obtain the vaccine at the time, and had

15  Decedent received the vaccine she most likely would have survived her Covid infection.

16        (b)   Defendants allowed nursing staff to wear isolation gowns, which were meant to be

17  disposed of after entering a resident's room, throughout the day without changing and thereby

18  reckless spreading the virus throughout the facility.  On one occasion, on Ms. Acebes' 88th birthday

19  on December 9, 2020, during a zoom visit with Decedent, Plaintiffs witnessed a nurse come into

20  Decedent's room wearing a yellow isolation gown meant to prevent contamination between

21  different parts of the facility.  Yet, this nurse came in and out of Ms. Acebes' room, never changing

22  her isolation gown, and even hugged Decedent, in reckless disregard for her safety.

23        (c)   Plaintiff Arlene Elamparo, prior to the Covid pandemic, complained on more than

24  one occasion about the facility's failure to clean her mother's room properly, thereby neglecting to

25  provide a safe and sanitary environment.

26        (d)   Plaintiffs further allege that because Ms. Acebes was blind, she essentially never

27  left her room and her exposure to Covid must have been as a result of Defendant's reckless and/or

28  negligent conduct in allowing staff to bring the Covid virus into her room.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

- 10 -

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

[1068701]

43.   The acts and/or omissions of Defendants, as stated above, were reckless and done in conscious disregard for the rights and safety of Decedent in light of their failure to recognize that Decedent was being subject to these acts of reckless neglect.

44.   As a direct and proximate result of the conduct of Defendants, Plaintiffs were compelled to and did employ the services of hospitals, physicians, surgeons, nurses, and the like to care for and treat Decedent, and did incur hospital, medical, professional, and incidental expenses, the exact amount of which expenses will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

45.   As a direct and proximate cause of the Defendants' conduct, Plaintiffs sustained the loss of love, affection, society, service, assistance, protection, comfort, support, right of support, expectations of future support and counseling, companionship, solace, and moral support, as well as other benefits and assistance NORA VASQUEZ ACEBES, all to their general damage in a sum in excess of $50,000.00, the exact amount of which expenses will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

46.   As a direct and proximate result of the Defendants' conduct, Plaintiffs have incurred funeral and burial expenses in an amount to be stated at the time of trial.

47.   As a direct and proximate result of the Defendants' conduct, which was carried out with oppression, fraud by concealment, malice and recklessness, Plaintiffs are entitled to enhanced remedies, including attorney's fees, costs, the pre-death pain and suffering and disfigurement of NORA VASQUEZ ACEBES (including but not limited pursuant to California Code of Civil Procedure section 377.34(b)), and punitive damages.

## THIRD CAUSE OF ACTION

### NEGLIGENCE/NEGLIGENCE *PER SE*

**(As Against THE RESIDENCES AT ROYAL BELLINGHAM INC., and DOES 1 through 100, inclusive)**

48.   Plaintiffs hereby reallege and incorporate by reference each and every preceding paragraph as if fully set forth herein.

- 11 -

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

49.   Defendants, by and through their management, agents, and employees, were charged with the care and custody of Decedent, an elder and dependent adult suffering from physical limitations and mental disease.

50.   Defendants were under a statutory duty to exercise reasonable care to provide assistance and prevent harm to Decedent and to comply with all applicable state laws and regulations governing skilled nursing facilities in California, including but not limited to:

(a)   Cal Health & Safety Code § 1279.6 (safety plan);

(b)   Cal Health & Safety Code § 1337.1 (adequate training);

(c)   Cal Health & Safety Code § 1599.1(a) (adequate and qualified staff);

(d)   22 CCR § 72311 (care plan and prompt reporting);

(e)   22 CCR § 72315 (required services);

(f)   22 CCR § 72329(a) and 75210(e) (adequate staffing);

(g)   22 CCR § 72517 (adequate training);

(h)   22 CCR § 72523 (adequate policies and procedures);

(i)   22 CCR § 72527(a)(11) (respect, dignity, and without abuse);

(j)   22 CCR § 72537 (reporting of communicable diseases);

(k)   22 CCR § 72539 (reporting of outbreaks); and

(l)   22 CCR § 72541 (reporting of unusual occurrences).

51.   Defendants continually, willfully, and recklessly breached their duties to Decedent by, among other acts and omissions, violating these laws and regulations.  These acts and omissions by the Defendants were a contributing factor in Decedent's severe injury, illness, and ultimate death.

52.   As a direct and proximate result of Defendants' conduct, Plaintiffs were compelled to and did employ the services of hospitals, physicians, surgeons, nurses, and the like to care for and treat Decedent, and did incur hospital, medical, professional, and incidental expenses, the exact amount of which expenses will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

53.   As a direct and proximate cause of Defendants' conduct, Plaintiffs sustained the loss of love, affection, society, service, assistance, protection, comfort, support, right of support,

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

expectations of future support and counseling, companionship, solace, and moral support, as well as other benefits and assistance, of NORA VASQUEZ ACEBES, as well as the pre-death pain and suffering and disfigurement of NORA VASQUEZ ACEBES (including but not limited pursuant to California Code of Civil Procedure section 377.34(b)), and punitive damages, all to their general damage in a sum in excess of $50,000.00, the exact amount of which expenses will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

54.   As a direct and proximate result of Defendants' conduct, Plaintiffs have incurred funeral and burial expenses in an amount to be stated at the time of trial.

55.   As a direct and proximate result of the Defendants' conduct, which was carried out with oppression, fraud by concealment, malice and recklessness, Plaintiffs are entitled to enhanced remedies, including attorney's fees, costs, the pre-death pain and suffering and disfigurement of NORA VASQUEZ ACEBES (including but not limited pursuant to California Code of Civil Procedure section 377.34(b)), and punitive damages.

## FOURTH CAUSE OF ACTION

### WRONGFUL DEATH

**(As Against THE RESIDENCES AT ROYAL BELLINGHAM INC., and DOES 1 through 100, inclusive)**

56.   Plaintiffs hereby reallege and incorporate by reference each and every preceding paragraph as if fully set forth herein.

57.   Decedent NORA VASQUEZ ACEBES died on January 18, 2021, as an ultimate result of the acts and omissions of the Defendants as set forth above.

58.   Defendants owed duties to protect Decedent from the abuse and neglect alleged herein, as aforesaid, which ultimately caused Decedent's death.   However, Defendants breached those duties by failing to prevent Decedent from contracting and becoming ill, ultimately leading to her death.

59.   The breaches of Defendants caused injury and death to Decedent.   Decedent would not have suffered death but for the conduct and breaches of duty of Defendants.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

[1068701]

60.   As a direct and proximate cause of the conduct of Defendants, Plaintiffs sustained the loss of love, affection, society, service, assistance, protection, comfort, support, right of support, expectations of future support and counseling, companionship, solace, and moral support, as well as other benefits and assistance, of NORA VASQUEZ ACEBES, as well as the pre-death pain and suffering and disfigurement of NORA VASQUEZ ACEBES (including but not limited pursuant to California Code of Civil Procedure section 377.34(b)), and punitive damages,  all to their general damage in a sum in excess of $50,000.00, the exact amount of which expenses will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

61.   As a direct and proximate result of the conduct of Defendants, Plaintiffs have incurred funeral and burial expenses in an amount to be stated at the time of trial.

## FIFTH CAUSE OF ACTION

### CONCEALMENT

### (As Against THE RESIDENCES AT ROYAL BELLINGHAM INC., and DOES 1 through 100, inclusive)

62.   Plaintiffs incorporate herein by reference all of the prior allegations as set forth in detail, above.

63.   During the various time frames identified herein, decedent NORA VASQUEZ ACEBES was a resident/tenant at Defendant's facility and was treated by various staff, physicians and healthcare providers at Defendant's facility, and as such, a fiduciary relationship was formed between plaintiffs and/or plaintiffs' decedent with defendants herein, and each of them.  As such, defendants were under a fiduciary duty to disclose material facts related to the status of the health and well-being of NORA VASQUEZ ACEBES including but not limited to whether NORA VASQUEZ ACEBES had been exposed to and/or contracted COVID-19 while at Defendant's facility, or was being exposed to an unreasonable risk of harm based on exposure to infected residents and staff, or whether she was otherwise physically ill.

64.   Plaintiffs are informed and believe, and thereon allege, that defendants and each of them failed to disclose, concealed and/or suppressed critical and important facts NORA VASQUEZ

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

- 14 -

ACEBES' health, safety and overall well-being, including but not limited to NORA VASQUEZ ACEBES' being exposed to an unreasonable risk of harm based on exposure to infected residents and staff and exposure to and/or contracting of COVID-19 within Defendant's facility.

65.    Defendants, and each of them, repeatedly concealed material and critical facts from Plaintiffs about the spread and prevalence of the COVID-19 virus within the facility, as well as the lack of precautions being taken to keep NORA VASQUEZ ACEBES safe from infection.

66.    Defendants, and each of them, provided Plaintiffs with the assurances of NORA VASQUEZ ACEBES' health, including that NORA VASQUEZ ACEBES was in a safe environment where every precaution was being taken to eliminate the risk of harm from COVID-19, and that she had not been exposed to and/or contracted COVID-19, however, at the same time defendants knew that such assurances were untrue and that NORA VASQUEZ ACEBES had been exposed to and/or contracted COVID-19 and/or was being recklessly exposed to risk of harm.

67.    At the time of these failures to disclose and concealment of critical and material facts, plaintiffs were ignorant of the existence of the facts that defendants concealed and failed to disclose. If plaintiffs or NORA VASQUEZ ACEBES had been aware of the existence of the facts concealed by defendants, particularly that NORA VASQUEZ ACEBES was being recklessly exposed to the virus through other infected residents and staff, and/or that she was exposed to and/or contracted COVID-19 at Defendant's facility, plaintiffs' decedent would not have continued as a resident/tenant and patient at Defendant's facility and would have sought residence as well as medical treatment and care elsewhere. Such reliance by plaintiff or plaintiffs' decedent was justified given the fact that Defendant's facility included physicians and/or staff members who purported to have specialized skills in administering the care and treatment to decedent and others such as decedent. In addition, based on the special and fiduciary relationship created, the defendants were under a duty to disclose relevant facts concerning plaintiffs' decedent's medical condition and treatment.

68.    As a proximate result of defendants' acts of concealment and suppression of critical and material information, Plaintiff did not remove NORA VASQUEZ ACEBES from Defendant's

facility, resulting in NORA VASQUEZ ACEBES becoming exposed to and ultimately infected with COVID-19 and subsequently succumbing to her injuries.

69.   As a proximate result of defendants' acts of concealment and suppression of critical and material information, plaintiffs have suffered damages as alleged herein.

70.   As a direct and proximate result of the above-described conduct of defendants, which caused  the deaths of decedent,  plaintiff has sustained the loss of love, affection, society, service, comfort, support, right of support, expectations of future support, and counseling, companionship, solace and mental support, as well as other benefits and assistance, of the decedent, as well as the pre-death pain and suffering and disfigurement of NORA VASQUEZ ACEBES (including but not limited pursuant to California Code of Civil Procedure section 377.34(b)), and punitive damages, all to the general and special damage in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, in accordance with Section 425.10 of the California Code of Civil Procedure.

71.   As a further direct and proximate result of the above-described conduct of the defendants, plaintiffs have incurred medical, funeral, and/or burial expenses in an amount to be stated according to proof, pursuant to Section 425.10 of the California Code of Civil Procedure.

72.   The concealment by the defendants, and each of them, was made in the course of the advice, care and treatment given to NORA VASQUEZ ACEBES and was a substantial factor in causing all of the damages alleged herein.

73.   Because the aforementioned conduct of the Defendants were carried out in a deliberate, cold, callous, and intentional manner in order to injure and damage Decedent or, in the alternative, was despicable conduct carried on with a willful and conscious disregard for the rights and safety of others and subjected Decedent to cruel and unjust hardship in conscious disregard for her rights, Plaintiffs request the assessment of punitive damages against Defendants in an amount according to proof.

74.   Also due to the aforementioned conduct of the Defendants which was carried out in a deliberate, cold, callous, and intentional manner in order to injure and damage decedent, Plaintiffs

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

[1068701]

1  also are entitled to attorney's fees and costs, as well as decedent's pain and suffering prior to her

2  death.

3

4        WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as

5  follows:

6      1.  For special damages according to proof;

7      2.  For general damages according to proof;

8      3.  For costs of suit and attorneys' fees herein incurred pursuant to <u>Welf. & Inst. Code</u>

9         §15657 *et seq*;

10      4.  For pre-judgment and post-judgment interest, if any, incurred;

11      5.  For reimbursement of medical expenses;

12      6.  For reimbursement of funeral and burial expenses;

13      7.  For the pre-death pain and suffering of decedent NORA VASQUEZ ACEBES;

14      8.  For pre-death pain, suffering, and disfigurement of decedent NORA VASQUEZ

15         ACEBES according to proof pursuant to <u>California Code of Civil Procedure § 377.34</u>;

16      9.  For punitive damages; and

17      10. For such other and further relief as the Court may deem proper.

18

19

20  DATED: August 31, 2022                GREENE BROILLET & WHEELER, LLP

21

22                                   *Ivan Puchalt*

23                           Robert D. Jarchi
                           Ivan Puchalt
                         Attorneys for Plaintiffs

24

25

26

27

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 955
EL SEGUNDO, CA 90245

[1068701]

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a trial by jury of all causes of action.

DATED: August 31, 2022                    GREENE BROILLET & WHEELER, LLP


_Ivan Puchalt_
_____
Robert D. Jarchi
Ivan Puchalt
Attorneys for Plaintiffs

PROOF OF SERVICE
(C.C.P. 1013A, 2015.5)

**STATE OF CALIFORNIA**

I am employed in the county of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 222 N. Pacific Coast Highway, Suite 2100, El Segundo, CA 90245.

On August 31, 2022 I served the foregoing document, described as **FIRST AMENDED COMPLAINT FOR DAMAGES** on the interested parties in this action by placing a true copy enclosed in sealed envelopes addressed as set forth on the attached service list.

 **XXX** **BY MAIL.**

**X**     As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at El Segundo, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

____     **BY PERSONAL SERVICE.** I delivered such envelope by hand to the offices of the addressee.

____     **BY OVERNIGHT DELIVERY.** I caused such envelope to be deposited with a delivery service (Federal Express) in El Segundo, California, for overnight delivery to the addresses set forth on the attached service list.

____     **BY FACSIMILE.** I faxed a copy of the above-described document to the interested parties as set forth on the attached service list.

 **XXX** **BY E-MAIL OR ELECTRONIC TRANSMISSION.** I caused the document(s) to be sent to the person(s) at the e-mail address(es) on the attached service list. I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

Executed on August 31, 2022 at El Segundo, California.

 **X**     **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**Christina Hicklin**_____     _____
**Name**                                                          **Signature**

| Estate of Acebes v. The Residences at Royal Bellingham Inc., et al. Service List | |
|---|---|
| Jeremy Vitug<br>6909 Reseda Boulevard<br>Reseda, CA 91335<br>Tel: (818) 634-6223<br>Fax: (818) 881-2788<br>vituglawgroup@gmail.com | Attorney for Defendant **The Residences at Royal Bellingham Inc.** |
| <u>Via Mail</u><br>**Glenda Seachon**<br>5210 Campling Av.<br>Regina Sk, Canada S4W OL8 | |

EXHIBIT C

**DEPARTMENT OF HEALTH & HUMAN SERVICES**                     Office of the Secretary

The General Counsel
Washington, D.C. 20201

**ADVISORY OPINION 21-01 ON THE**
**PUBLIC READINESS AND EMERGENCY PREPAREDNESS ACT**
**SCOPE OF PREEMPTION PROVISION**
**JANUARY 8, 2021**

Following the issuance by the Secretary on December 3, 2020, of the Fourth Amendment to his Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, we have received questions as to whether the PREP Act applies where a covered person declined to use a covered countermeasure when it arguably ought to have been used.[1]  *See* 85 Fed. Reg. 79,190 (Dec. 9, 2020).  These inquiries were stimulated, as we understand, by a spate of recent lawsuits, most involving nursing homes and other healthcare facilities, where patients or their estates allege that patients contracted COVID-19 because the facility, among other things, failed to provide its staff with personal protective equipment ("PPE"), failed to teach the staff how to properly use that equipment, or failed to ensure that its staff used the PPE that it had been given.  This Advisory Opinion addresses these questions in the context of our administration of the PREP Act and the Secretary's PREP Act Declaration, as amended.

**I.      Analysis**

There has been a growing number of suits related to the use or non-use of covered countermeasures against COVID-19, including PPE.  These cases tend to be filed in state courts alleging a variety of state law-based torts.  In this "jurisprudential Kabuki dance" (*Maine Public Utilities Com'n v. F.E.R.C.*, 625 F.3d 754, 758 (D.C. Cir. 2010)), defendants file removal petitions and plaintiffs respond with remand motions.  To resolve the remand motions, courts first assess whether the doctrine of complete preemption applies.  Ordinary preemption is a defense and does not support Article III subject matter jurisdiction (usually under 28 U.S.C. § 1331), a prerequisite for removal.  *See Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804 (1986).  In contrast, complete preemption is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin General Hosp. v. Modesto & Empire Traction Co*., 581 F.3d 941, 945 (9th Cir. 2009) (quoting *Franciska Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund,* 538 F.3d 594, 596 (7th Cir. 2008) (internal quotations omitted).  Relatively few statutes completely preempt.

---

[1]      The PREP Act is the Public Readiness and Emergency Preparedness Act, Pub. L. No. 109-148, div. C, § 2, 119 Stat. 2818 (Dec. 30, 2005), codified at 42 U.S.C. §§ 247d-6d, 247d-6e. It has been amended through the Pandemic and All-Hazards Preparedness Reauthorization Act of 2013, Pub. L. No. 113–5, title IV, § 402(g)(2), (3), 127 Stat. 196 (Mar. 13, 2013) and further amended by § 6005 of the Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 177 (March 18, 2020) and § 3103 of the Coronavirus Aid Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (March 27, 2020).

**A.      The PREP Act is a "Complete Preemption" Statute**

The Supreme Court first articulated the doctrine of complete preemption as a basis for federal question removal jurisdiction under 28 U.S.C. § 1441(a) in *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 559 (1968) (holding that the Labor Management Relations Act, 1947 completely preempted state court jurisdiction). Thereafter, the doctrine was extended to the Employee Retirement Income Security Act of 1974 in 1987, the National Bank Act in 2003, and the Air Transportation Safety and System Stability Act in 2005.  *See Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58 (1987) (ERISA completely preempts state law); *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) (the same); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7–11 (2003) (National Bank Act completely preeempts); *In re WTC Disaster Site*, 414 F.3d 352, 375 (2d Cir. 2005) (Air Transportation Safety and System Stability Act completely preempted state claims and ousted state courts of jurisdiction by creating an exclusive federal cause of action).  The *sine qua non* of a statute that completely preempts is that it establishes either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court.  The PREP Act does both.

Once complete preemption attaches, the district court is usually obligated to dismiss the case as pleaded, either because no federal cause of action is alleged or the exclusive initial venue is a federal administrative agency.

All that is well and good, but it does not address the issue that appears to have perplexed district courts, namely when is the PREP Act triggered.  District courts appear to have labored hard attempting to ordain whether the non-use of a covered countermeasure triggers the PREP Act and its complete preemption regime.  At one extreme, plaintiff may have pleaded that the facility failed *in toto* to provide any of its staff or patients with any PPE, a covered countermeasure if NIOSH approved or FDA cleared or waived.  Other plaintiffs allege that the quantity of PPE was inadequate, that staff were not timely provided PPE or that staff were not adequately trained to use PPE.  The latter three complaints reflect many of the complaints that we have reviewed.

The PREP Act's immunity provision, which triggers exclusive federal jurisdiction, states as follows:

> Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, <u>relating to</u>, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.

Public Health Service Act § 319F-3(a)(1), 42 U.S.C. § 247d-6d(a)(1) (emphasis supplied).

The PREP Act goes on to provide that its immunity

> applies to any claim for loss that has a causal relationship with the administration to or <u>use</u> by an individual of a covered countermeasure, including a causal

> relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or <u>use</u> of such countermeasure.

*Id*. at § 319F-3(a)(2)(B), 42 U.S.C. § 247d-6d(a)(2)(B) (emphasis supplied).

Some district courts have interpreted the scope of the immunity in subparagraph (B) as requiring "use." Under this view, if a covered countermeasure were not used, then there is no PREP Act immunity. According to one court, "[t]here is simply no room to read [the PREP Act] as equally applicable to the non-administration or non-use of a covered countermeasure." *Lutz v. Big Blue Healthcare, Inc*., ___F. Supp. 3d ___, 2020 WL 4815100, at *8 (D. Kan. 2020) (emphasis in original) (granted remand motion).

However, this "black and white" view clashes with the plain language of the PREP Act, which extends immunity to anything "relating to" the administration of a covered countermeasure. For example, consider a situation where there is only one dose of a COVID–19 vaccine,[2] and a person in a vulnerable population and a person in a less vulnerable population both request it from a healthcare professional. In that situation, the healthcare professional administers the one dose to the person who is more vulnerable to COVID–19. In that circumstance, the failure to administer the COVID–19 vaccine to the person in a less-vulnerable population "relat[es] to . . . the administration to" the person in a vulnerable population. The person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population. Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections. There can potentially be other situations where a conscious decision not to use a covered countermeasure could relate to the administration of the countermeasure. In contrast, the failure to purchase any PPE, if not the outcome of some form of decision-making process may not be sufficient to trigger the PREP Act.

Where a facility has been allocated a scarce therapeutic purchased by the federal government and that facility fails to administer that therapeutic to an individual who meets the requirements of the FDA's authorization, approval, or license, and whose physician prescribes that therapeutic, then the facility's refusal to administer that therapeutic could still trigger the PREP Act assuming the non-use of the therapeutic was the result of conscious decision-making. However, the facility may still be liable under the PREP Act, if the plaintiff alleges that the decision to deny him or her the therapeutic was wanton and willful and resulted in death or serious injury. *See* 42 U.S.C. § 247d-6d(d)-(e). Such a case would be transferred to the District Court for the District of Columbia for resolution by a three-judge panel. The facility may also be subject to a federal enforcement action.

---

[2] For simplicity, this example assumes a patient only requires one dose of the vaccine.

The language of the PREP Act itself supports a distinction between allocation which results in non-use by some individuals, on the one hand, and nonfeasance, on the other hand, that also results in non-use.

Included within the set of "covered persons," *i.e*., those entitled to immunity, are "program planners." 42 U.S.C. § 247d-6d(i)(2)(B)(iii). A "program planner" is

> a State or local government, including an Indian tribe, a person employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b).

*Id.* at § 247d-6d(i)(6).

A program planner is someone who is involved in providing or allocating covered countermeasures. Program planning inherently involves the allocation of resources and when those resources are scarce, some individuals are going to be denied access to them. Therefore, decision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning, and is expressly covered by PREP Act

There are going to be circumstances where plaintiff pleads that defendant's culpability is the result of its failure to make any decisions whatsoever, thereby abandoning its duty to act as a program planner or other covered person. Although this is a small hole through which to wiggle to avoid complete preemption, we are confident, were it not for two legal constraints, that it would grow as plaintiffs become more adept at fashioning their pleadings. However, "complete preemption . . . functions as an exception to the well-pleaded complaint rule." *Giles v. NYLCare Health Plans*, *Inc*., 172 F.3d 332, 336 (5th Cir. 1999). Thus, federal courts are free to entertain discovery to ascertain, for jurisdictional purposes, the facts underlying the complaint. *See United Surgical Assistants, LLC v. Aetna Life Ins. Co.*, 2014 WL 4059889, at *1 (M.D. Fla. Aug. 14, 2014) (allowing jurisdictional discovery on whether plaintiff's claim was completely preempted by ERISA).

**B.**     **Fourth Amendment to the Secretary's Declaration Supports the *Grable* Doctrine**

In addition to complete preemption as the basis for article III jurisdiction and removal, the Court recognized a separate doctrine in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg*., 545 U.S. 308 (2005). Under *Grable*, even in the absence of a claim arising under federal law, "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg*., 545 U.S. 308, 312 (2005) (emphasis supplied). Thus, a substantial federal question is implicated, for example, where "the

4

interpretation of a federal statute [ ] actually is in dispute in the litigation and is so important that it sensibly belongs in federal court." 545 U.S. at 315. Here, ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court. The Secretary, in his Fourth Amendment to his PREP Declaration, similarly concluded, when he stated that

> [t]here are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID–19 pandemic among federal, state, local, and private-sector entities.

85 Fed. Reg. at 79,197 (col. c).

*See also* 42 U.S.C. § 247d-6d(b)(7) ("No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection."). As such, the secretarial determination provides the underlying basis for invoking the *Grable* doctrine with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure. Once invoked, the court retains the case to decide whether the immunity and preemption provisions apply; if they do not apply, then the court would try the case as it would a diversity case. If the court finds, though, that the PREP Act applies, it would dismiss the case or if death or serious physical injury proximately caused by willful misconduct is alleged, transfer it to the District Court for the District of Columbia. *See* 42 U.S.C. § 247d-6d(d)-(e).

## II.    Limitations

This Advisory Opinion may be supplemented or modified. It is intended to minimize the need for individual advisory opinions. This Advisory Opinion sets forth the current views of the Office of the General Counsel.[3] It is not a final agency action or a final order. It does not have the force or effect of law.

*Robert P. Charrow*

Robert P. Charrow
General Counsel
January 8, 2021

---

[3]     *See Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 647–48 (6th Cir. 2004) (holding that the Chief Counsel of the National Highway Traffic Safety Administration had delegated authority to issue advisory opinions to regulated entities in fulfillment of a congressional directive to promote regulatory compliance); 5 U.S.C. § 301 ("The head of an executive department . . . may prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and performance of its business[.]"); *Statement of Organization, Functions, and Delegations of Authority*, 85 Fed. Reg. 54,581, 54,583 (Sept. 2, 2020).

# EXHIBIT D

**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Office of the Secretary

_____

The General Counsel
Washington, D.C. 20201

August 14, 2020

Thomas Barker
Foley Hoag LLP
1717 K Street, N.W.
Washington, DC 20006-5350

Dear Mr. Barker: / m,

Thank you for your July 20, 2020 letter seeking confirmation that senior living communities are "covered persons" under the Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d, (the PREP Act) when performing certain functions during this declared emergency.

For the reasons set forth below, we conclude that senior living communities are "covered persons" under the PREP Act when they provide a facility to administer or use a covered countermeasure in accordance with the Secretary's March 10, 2020 Declaration under the PREP Act. _See_ 85 Fed. Reg. 15,198 (March 17, 2020) (Declaration).[1]

Under the PREP Act and the Declaration, "covered persons," when used with respect to the administration or use of a covered countermeasure, "include manufacturers, distributors, program planners, and qualified persons, and their officials, agents, and employees." _Id._ at 151,199; _see also_ 42 U.S.C. § 247d-6d(i)(2). The statute defines "program planner" as a

> State or local government, including an Indian tribe, a person employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b).

42 U.S.C. § 247d-6d(i)(6).

_____

[1] This letter addresses only whether senior living communities can be "covered persons." To receive PREP Act immunity, the covered person must satisfy other requirements of the PREP Act and the Secretary's declaration under the Act.

Thomas Barker
August 14, 2020
Page 2


The Declaration incorporates this definition, and its preamble explains that a program planner can be a "private sector employer or community group" that "carries out the described activities." 85 Fed. Reg. at 15,201. Thus, a senior living community meets the definition of a "program planner" to the extent that it supervises or administers a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including by "provid[ing] a facility to administer or use a Covered Countermeasure in accordance with" the Declaration.


This letter sets forth the current views of the Office of the General Counsel.[2] It is not a final agency action or a final order. Nor does it bind HHS or the federal courts. It does not have the force or effect of law.[3]


Sincerely yours,

Robert P. Charrow
General Counsel


---

[2] *See Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 647-48 (6th Cir. 2004) (holding that the Chief Counsel of the National Highway Traffic Safety Administration had delegated authority to issue advisory opinions to regulated entities in fulfillment of a congressional directive to promote regulatory compliance); 5 U.S.C. § 301 ("The head of an executive department . . . may prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and performance of its business[.]").

[3] It is possible that a senior living community could also be a "qualified person." Under the PREP Act, "qualified person" includes a "person within a category of persons so identified in" a PREP Act declaration. 42 U.S.C. § 247d-6d(i)(8). The Declaration defined "qualified person" to include "[a]ny person authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction…to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures, and their officials, agents, employees, contractors, and volunteers." 85 Fed. Reg. at 15,201-15,202. To the extent a senior living community were so authorized, it could be a qualified person.

# EXHIBIT E



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Guidance**
Office of the Secretary

Office of the Assistant Secretary for Health
Washington, D.C.  20201

U.S. Department of Health & Human Services
Office of the Assistant Secretary for Health
August 31, 2020

### Guidance for PREP Act Coverage for COVID-19 Screening Tests at Nursing Homes, Assisted-Living Facilities, Long-Term-Care Facilities, and other Congregate Facilities

On January 31, 2020, the Secretary of Health and Human Services declared that the 2019 novel coronavirus (COVID-19) is a public-health emergency for the United States.[1]  The United States Department of Health and Human Services (HHS) is the lead agency for the federal government's response to the COVID-19 pandemic.

A key component of that response is rapidly expanding COVID-19 testing across America.  Within HHS, the Office of the Assistant Secretary for Health leads federal efforts to support that expansion.  Enhancing the safety of nursing homes, assisted-living facilities, long-term-care facilities, and other facilities where people congregate to receive care or education or to work (collectively, "congregate facilities") is critical for our Nation's response to the COVID-19 pandemic.  Testing for COVID-19, including those who are asymptomatic, is a key part of that effort.[2]

---

[1] The Secretary's declaration of a public health emergency was retroactively effective on January 27, 2020.

[2] *See, e.g.*, Interim SARS-CoV-2 Testing Guidelines for Nursing Home Residents and Healthcare Personnel, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/nursing-homes-testing.html (last visited Aug. 29, 2020) (explaining that, in addition to nursing homes, "testing residents with signs or symptoms of COVID-19 and testing asymptomatic close contacts should also be applied to other long-term care facilities (e.g., assisted living facilities, intermediate care facilities for individuals with intellectual disabilities, institutions for mental disease, and psychiatric residential treatment facilities)"); Testing in Institutions of Higher Education, available at https://www.cdc.gov/coronavirus/2019-ncov/community/colleges-universities/ihe-testing.html (last visited Aug. 29, 2020) ("In areas with moderate to substantial community transmission where resources allow, local health officials and [institutions of higher learning] may consider testing some or all asymptomatic students, faculty, and staff who have no known exposure (e.g., students in congregate housing such as residence halls) to identify outbreaks and inform control measures."); Testing asymptomatic individuals without known or suspected exposure to SARS-CoV-2 for early identification in special settings, available at https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/testing-non-healthcare-workplaces.html#testing-3 (last visited Aug. 29, 2020) ("Viral testing of workers without symptoms may be useful to detect COVID-19 early and stop transmission quickly, particularly in areas with moderate to substantial community transmission.").

Both the Food and Drug Administration (FDA) and the Centers for Medicare & Medicaid Services (CMS) have issued guidance and provided other information regarding screening asymptomatic individuals, including in congregate settings.

According to FDA,

> For health care providers who are ordering an authorized SARS-CoV-2 diagnostic test to be used off-label (outside the authorization) to screen asymptomatic individuals not suspected of having COVID-19, we recommend they consider the information below.  Although the current available literature suggests that symptomatic individuals with COVID-19 and asymptomatic individuals without known exposure may have similar levels of viral genetic material, there is limited data on the distribution of viral loads in individuals with and without symptoms across demographics, different settings, and specimen types.  Therefore, when screening asymptomatic individuals, health care providers should consider using a highly sensitive test, especially if rapid turnaround times are available.  If highly sensitive tests are not feasible, or if turnaround times are prolonged, health care providers may consider use of less sensitive point-of-care tests, even if they are not specifically authorized for this indication (commonly referred to as "off-label").  For congregate care settings, like nursing homes or similar settings, repeated use of rapid point-of-care testing may be superior for overall infection control compared to less frequent, highly sensitive tests with prolonged turnaround times.[3]

CMS has concluded that

> [it] requires facilities with a CLIA Certificate of Waiver to follow the manufacturer's instructions (Instructions For Use) when performing laboratory testing.  The FDA has granted Emergency Use Authorizations (EUA) to certain antigen tests for testing specimens from individuals who are suspected of COVID-19 by their healthcare provider within a number of days after the onset of symptoms, specific to each authorized test's validated performance. The FDA has provided recommendations for health care providers who are ordering authorized tests outside their authorization (e.g., antigen tests for asymptomatic individuals)— see FDA's FAQ on Testing for SARS-CoV-2 ("Q: Does the FDA have recommendations for health care providers using SARS-CoV-2 diagnostic tests for screening asymptomatic individuals for COVID-19?") for further information.

> CMS will temporarily exercise enforcement discretion for the duration of the COVID-19 public health emergency under CLIA for the use of SARS-CoV-2 POC antigen tests on asymptomatic individuals.  Specifically, CMS will not cite facilities with a CLIA Certificate of Waiver when SARS-CoV-2 POC antigen tests are performed on asymptomatic individuals, as described in the FDA FAQ.[4]

Therefore, as an Authority Having Jurisdiction under the Secretary's March 10, 2020 declaration under the Public Readiness and Emergency Preparedness Act (PREP Act),[5] Assistant Secretary for

---

[3] General FAQs, Q: Does the FDA have recommendations for health care providers using SARS-CoV-2 diagnostic tests for screening asymptomatic individuals for COVID-19?, available at https://www.fda.gov/medical-devices/coronavirus-covid-19-and-medical-devices/faqs-testing-sars-cov-2#general, (last visited Aug. 29, 2020).

[4] What is CMS's policy regarding laboratories performing antigen tests authorized by the Food and Drug Administration (FDA) under an Emergency Use Authorization (EUA) for use at the point of care (POC) or in patient care settings operating under a Clinical Laboratory Improvement Amendments of 1988 (CLIA) Certificate of Waiver on asymptomatic individuals?, available at https://www.cms.gov/files/document/clia-poc-ag-test-enforcement-discretion.pdf (last visited Aug. 29, 2020).

[5] Declaration Under the Public Readiness and Emergency Preparedness Act for Medical

Health, Admiral Brett P. Giroir, M.D., extends coverage under the PREP Act to licensed health-care practitioners prescribing or administering point-of-care COVID-19 tests, using anterior nares specimen collection or self-collection, for screening in congregate facilities across the Nation.  Such tests must be authorized, approved, or cleared by the FDA (collectively, FDA-authorized COVID-19 tests).

PREP Act coverage encompasses licensed health-care practitioners prescribing or administering FDA-authorized COVID-19 tests, including for off-label (outside the authorization) use to screen asymptomatic individuals in congregate facilities.[6]

In addition to the requirements set forth herein, licensed health-care practitioners must comply with the requirements of the PREP Act and the conditions of the Secretary's declaration under the PREP Act in order to receive PREP Act coverage.[7]

This PREP Act coverage preempts any State or local provision of law or legal requirement that prohibits or effectively prohibits such licensed health-care practitioners from administering or prescribing FDA-authorized COVID-19 tests to symptomatic or asymptomatic individuals at congregate facilities.[8]

---

Countermeasures Against COVID–19, 85 Fed. Reg. 15,198 (Mar. 17, 2020).

[6] FDA determines the scope of on-label authorization.

[7] *See, e.g.*, Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act, available at https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-hhs-ogc.pdf (last visited Aug. 29, 2020).

[8] *See, e.g.*, Advisory Opinion 20-02 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act, available at https://www.hhs.gov/sites/default/files/advisory-opinion-20-02-hhs-ogc-prep-act.pdf (last visited Aug. 29, 2020).